**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| NWDC RESISTANCE, COALITION OF ANTI-RACIST WHITES, DETENTION WATCH NETWORK,<br><br>        *Plaintiffs*,<br><br>IMMIGRATION & CUSTOMS ENFORCEMENT, RONALD DONATO VITIELLO, in his official capacity  as Acting Director of Immigration and Customs Enforcement; and KIRSTJEN NIELSEN, in her official capacity as Secretary of Homeland Security,<br><br>        *Defendants*. | No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

This lawsuit challenges the practice of Defendant Immigrations and Customs Enforcement ("ICE") to systematically surveil, detain, and deport immigrant activists who speak out about immigration policies and practices. ICE cannot seriously dispute that such a practice exists. For example, ICE admits it targeted Maru Mora-Villalpando, a member of Plaintiff Northwest Detention Center Resistance ("NWDC Resistance"), because of her "anti-ICE protests." Ravi Ragbir was arrested after protests at his ICE check-in meeting, which ICE characterized as an unwanted "display of wailing kids and wailing clergy." Daniela Vargas was

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF · 1
4828-9634-0601v.1 0201359-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

arrested as she left a press conference supporting the Deferred Action for Childhood Arrivals ("DACA") program. And Baltazar Aburto Gutierrez was arrested because, as an ICE agent told him, he had spoken to the newspaper.

ICE's actions have injured Plaintiffs NWDC Resistance, Coalition of Anti-Racist Whites ("CARW"), and Detention Watch Network ("DWN"). All these organizations have historically engaged in a significant amount of First Amendment-protected conduct. All have been forced to divert scarce resources to fighting ICE's retaliation against activists, thereby frustrating their missions to draw attention to confront and challenge immigration detention conditions.

Plaintiffs respectfully request that this Court vindicate their First Amendment rights by declaring ICE's actions unconstitutional and enjoining its unlawful policy of retaliation.

## JURISDICTION AND VENUE

1.       This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims arise under the laws and Constitution of the United States, including the First Amendment.

2.       Venue is proper in this District under 28 U.S.C. § 1391. A substantial part of the events giving rise to this action occurred in this District.

3.       An actual and justiciable controversy exists between the parties under 28 U.S.C. § 2201, and this Court has authority to grant declaratory and injunctive relief, *id.* §§ 1351, 2201, 2202.

## PARTIES

4.       Plaintiff NWDC Resistance is a grassroots collective led by U.S. citizens and undocumented immigrants and located in Tacoma, Washington. It is an unincorporated association formed for the purposes of confronting human rights violations at the Northwest Detention Center and dedicated to ending the detention and deportation of immigrants.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 2
4828-9634-0601v.1 0201359-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

5.      Plaintiff Coalition of Antiracist Whites ("CARW") is an organization of white people located in Seattle, Washington. CARW works to undo institutional racism and white privilege through education and organizing.

6.      Plaintiff Detention Watch Network ("DWN"), based in Washington, DC, is a non-profit 501(c)(3) coalition of approximately 200 organizations and individuals working against the injustices of the immigration detention and deportation systems. Its member organizations serve U.S. citizens and documented and undocumented immigrants.

7.      Defendant Immigration and Customs Enforcement ("ICE") is a component of Department of Homeland Security ("DHS"), an executive department of the United States. It is headquartered in Washington, DC.

8.      Defendant Ronald Donato Vitiello is Acting Director of ICE, and is sued in his official capacity only.

9.      Defendant Kirstjen Nielsen is Secretary of DHS, and is sued in her official capacity only.

## FACTUAL ALLEGATIONS

10.      Since January 2017, ICE has engaged in a pattern and practice of selectively enforcing immigration laws against outspoken immigrant rights activists who publicly criticize U.S. immigration law, policy, and enforcement.

11.      ICE has investigated, surveilled, harassed, raided, arrested, detained, and deported those activists immediately following press appearances and news conferences. It has detained spokespeople and directors of immigration advocacy organizations. It has surveilled the organizations' headquarters and targeted their members.

12.      This sharp spike in immigration enforcement targeting the most vocal immigration activists is intended to stifle dissent. According to U.S. Representative Jerry Nadler: "These are well-known activists who've been here for decades, and [ICE is] saying to

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF ˙ 3
4828-9634-0601v.1 0201359-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

them: 'Don't raise your head.'" Similarly, U.S. Representative Luis Gutierrez has stated: "I have long suspected that very vocal advocates were harshly targeted after they spoke out."

13.     On January 26, 2018, thirty-one members of Congress sent a letter to ICE and DHS expressing concern about the agencies' targeting of activists, which they explained "may create a broader chilling effect within the community, dissuading some immigrants from invoking their legal rights for fear that doing so will result in retaliation by ICE."

14.     On February 14, 2018, the Office of the United Nations High Commissioner for Human Rights issued a statement that Mora-Villalpando's "notice to appear at deportation proceedings, received without warning, seems to be related to her advocacy work on behalf of migrant detainees."

15.     On February 16, 2018, the Inter-American Commission on Human Rights ("IACHR") issued a statement expressing "deep concern" about allegations that the United States is targeting immigrant human rights defenders and community leaders for detention and deportation. The IACHR has identified Mora-Villalpando as one such activist.

16.     On March 22, 2018, four members of Congress sent a letter to ICE expressing concern about retaliation against activists, stating that "the use of law enforcement resources to retaliate against critics and political opponents of the President is contrary to our most basic democratic norms."

## I.     Known Instances of Activists Targeted by ICE for Speaking Out

### A.     Daniela Vargas

17.     On March 1, 2017, in Jackson, Mississippi, ICE agents detained Daniela Vargas, a 22-year-old activist and DACA recipient, as she left a news conference where she had spoken alongside immigration advocacy groups. Vargas had witnessed ICE arrest her family the previous month and was not detained then because she told officers that she had DACA status. That status had expired, but Vargas was in the process of applying for renewal.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 4
4828-9634-0601v.1 0201359-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

18.     ICE agents arrested Vargas minutes after she spoke to reporters outside Jackson City Hall. A person who witnessed the arrest reported that ICE agents opened the car door saying: "You know who we are and you know why we're here." Although she had a pending DACA case, ICE agents explained that she was listed as a "visa overstay" and detained her.

## B.     Migrant Justice

19.     ICE has targeted multiple members of Migrant Justice, a community-based non-profit organization of Vermont dairy farmworkers and their families. A majority of Vermont dairy workers are immigrants, and Migrant Justice has engaged in campaigns to defend the rights of their members as workers and as immigrants. Migrant Justice has sought to hold immigration enforcement agencies, including ICE, accountable for rights violations.

20.     On March 17, 2017, ICE arrested Jose Enrique Balcazar Sanchez and Zully Victoria Palacios Rodriguez shortly after they left a meeting at Migrant Justice's office. Balcazar Sanchez has been a visible Migrant Justice representative and publicly promoted policies to limit ICE's entanglement with local law enforcement, serving as one of Migrant Justice's primary spokespeople in its campaigns for driver's licenses and for a fair and impartial policing policy, and on a task force to advise the Vermont Attorney General on immigration issues. Palacios Rodriguez is a key Migrant Justice organizer and was arrested because she had overstayed her visa—a civil violation—by approximately eight months. She was held without bail, which is atypical treatment for an immigrant who has overstayed a visa.

## C.     Baltazar "Rosas" Aburto Gutierrez

21.     In early December 2017, ICE agents detained Baltazar "Rosas" Aburto Gutierrez.  The agents explicitly referenced the fact that Aburto Gutierrez had spoken to newspapers in November 2017, which Aburto Guiterrez had done to speak out about the circumstances of his partner's arrest and deportation to Mexico. Although he made his comments anonymously in a *Seattle Times* article, a second article in the *Chinook Observer* reference his nickname, "Rosas," and both articles reported his partner's full name. When the

1  ICE agent approached Aburto Gutierrez, he said: "You are Rosas" and "You are the one from

2  the newspaper" and that "[m]y supervisor asked me to come find you because of what appeared

3  in the newspaper."

4        **D.**    **Ravi Ragbir**

5        22.    Ravi Ragbir is the director of the immigrant advocacy group New Sanctuary

6  Coalition in New York City, a collection of 150 faith-based organizations, and chair of the

7  Board of Directors for Families for Freedom, a multi-ethnic human rights organization by and

8  for families facing and fighting deportation. A nationally recognized activist, Ragbir advocates

9  for immigrant rights and against immigration enforcement and detention, and has trained other

10  advocates, allies, community organizers, and elected officials on those issues.

11        23.    On January 11, 2018, during a routine check-in, with scores of Ragbir's

12  supporters rallying outside the federal building, ICE detained Ragbir with plans to deport him

13  immediately based on a prior deportation order. An ICE agent had expressed anger at the press

14  surrounding Ragbir's prior ICE check-in.

15        24.    Ragbir's attorneys filed a motion for temporary restraining order in the U.S.

16  District Court for the Southern District of New York to stay his impending deportation.

17  Comparing the Trump administration's immigration policies to those of an authoritarian

18  regime, U.S. District Judge Katherine B. Forrest said it was unconstitutional and cruel for

19  authorities to "pluck him out of his life without a moment's notice." Her decision likened ICE's

20  actions to "treatment we associate with regimes we revile as unjust."

21        **E.**    **Jean Montrevil**

22        25.    Jean Montrevil emigrated from Haiti with a green card in 1986, when he was 17

23  years old. Federal authorities ordered him deported in the early 1990s because of a conviction

24  for possession of cocaine. Notwithstanding his order of deportation, Montrevil was released

25  and spent more than two decades living and working in the United States on an Order of

26

27

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 6
4828-9634-0601v.1 0201359-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Supervision. He started his own business, married a U.S. citizen, and had four U.S. citizen children.

26.     With Ragbir, Montrevil co-founded the New Sanctuary Coalition. Like Ragbir, he became a public figure in this role, advocating for the rights of undocumented immigrants and organizing an accompaniment program for individuals facing frightening ICE check-ins.

27.     On January 3, 2018, while appeals were still pending in his immigration case, ICE abruptly arrested Montrevil at his home and detained him. ICE deported him to Haiti less than two weeks later, where he remains today.

28.     On January 18, 2018, hundreds of protesters rallied in support of Montrevil, demanding his return to the United States.

**F.     Eliseo Jurado**

29.     Eliseo Jurado was born in Mexico and came to the United States as a teenager. His father is a U.S. citizen; his mother is a green card holder. He is married to Encalada Latorre, a Peruvian woman who has taken sanctuary in churches in Boulder, Colorado since December 2016. The couple has two U.S. citizen children. Latorre has been the subject of extensive news coverage since she moved into a local church to avoid deportation.

30.      On January 11, 2018, ICE detained Jurado after he left his home to run an errand. Although local ICE Field Office Director Jeffrey Lynch denied that Jurado's arrest was related to his wife's decision to take sanctuary, he confirmed in his statement that Jurado came to the agency's attention during an investigation into Latorre.

**G.     Amer Othman Adi**

31.     Amer Othman Adi, a 57-year-old businessman, husband and father, arrived in the United States at age 19. He was placed into removal proceedings decades ago, accused of entering a "sham" marriage to secure Lawful Permanent Resident ("LPR") status. Adi was told that he would be deported in 2016, but ICE granted a temporary stay.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF ˉ 7
4828-9634-0601v.1 0201359-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

32.     On January 16, 2018, ICE arrested and detained Adi. The stay remained in effect. To protest his deportation, he began a hunger strike. Ohio Democratic congressman Tim Ryan introduced a bill to grant Adi LPR, which would have allowed him to remain in the United States. The House Judiciary Subcommittee on Immigration and Border Security approved the bill, asking ICE to grant Adi a six-month stay of deportation. But ICE reversed its stay and rejected the congressional request. Adi was deported to Jordan on January 29, 2018.

**H.     Alejandra Pablos**

33.     Alejandra Pablos is a human rights activist who works as a field coordinator for the National Latina Institute for Reproductive Health. In her work, she has highlighted "crimmigration," the system in which immigrants are funneled into the immigrant detention system from the criminal justice system.

34.     In January 2018, she was arrested during a peaceful protest of immigration enforcement and detention outside a DHS office in Virginia.

35.     At her next ICE check-in, in March 2018, Pablos was abruptly detained and shipped to Eloy Detention Center, despite having a pending asylum case. She spent more than 40 days in detention before an immigration judge ordered her released on bond.

**I.     Sergio Salazar**

36.     Sergio Salazar is a filmmaker and activist who came to the United States from Mexico when he was 2 years old. He is committed to fighting deportations, police violence, and corporate exploitation. He had status under the DACA program until its expiration on August 2, 2018, at which time he had applied for renewal.

37.     In July 2018, the *San Antonio Express-News* quoted Salazar as saying that he and his group planned to remain in an encampment in front of an ICE processing facility until "ICE no longer operates in San Antonio."

38.     On August 2, 2018, ICE arrested Salazar at that encampment. The ICE agents took him behind a Walmart and shackled him. The agents asked him to be an informant against

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 8
4828-9634-0601v.1 0201359-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

fellow protesters and told him that if he did, it could help his immigration case. They also told him that his recent DACA renewal application had been denied because he was a "bad person."

**J.     Emilio Gutierrez-Soto**

39.     Emilio Gutierrez-Soto is a journalist who arrived in the United States in 2008 to request asylum, having fled his home in Mexico due to threats he had received for reporting on corrupt government officials. His asylum proceedings are pending.

40.     In October 2017, at the National Press Club, he accepted the Aubuchon Freedom of the Press award on behalf of journalists in Mexico, one of the most dangerous countries in the world for journalists. In his speech, he rebuked ICE and the Trump administration for their immigration policies and stated that the Administration "barter[s] away the international laws."

41.     On December 7, 2017, ICE took Gutierrez-Soto into custody.

42.     His attorneys filed for a writ of habeas corpus, alleging among other things, that Gutierrez-Soto was targeted for detention due to his exercise of his First Amendment rights.

43.     On July 10, 2018, the U.S. District Court for the Western District of Texas found that he had "offered enough evidence to create a genuine issue of material fact regarding whether [ICE] violated [his] First Amendment rights" by offering evidence that ICE officials targeted him because they did not approve of the negative press that he was generating.

44.     On July 27, 2018, ICE released Gutierrez-Soto from detention.

**K.     Maru Mora-Villalpando**

45.     Mora-Villalpando is a community organizer, trainer, and the founder of Latino Advocacy, an immigrant rights group. She is also an active leader and member of NWDC Resistance, which she and other undocumented immigrants founded to support hunger strikers at NWDC. She has more than 15 years of experience working on issues of immigration, racial, and reproductive justice. Her work focuses on highlighting and ending injustices committed by local and federal authorities against immigrants and immigrant detainees.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 9
4828-9634-0601v.1 0201359-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

46.     Over the past decade, Mora-Villalpando has organized multiple local and statewide campaigns and protests in support of immigrants and immigrant detainees and against ICE and other federal and local authorities. For example, in 2006, she organized a campaign in Snohomish County to ensure immigrants in local hospitals are provided adequate language interpretation. In 2007, she organized the Latino community in Lynwood to oppose the practice of the Lynwood police hosting ICE agents in their police station. In 2011, she led an effort to defeat four anti-immigrant bills in the 2011 Washington legislative session.

47.     Mora-Villalpando is regularly invited to speak in local, state and international forums as an expert on immigration detention and deportations in Washington and beyond. For example, in 2014, she served on the Blue-Ribbon Commission convened by the National Day Laborer's Organizing Network, a commission tasked with putting together recommendations for then-President Obama on immigration-related executive actions. In October 2016, she attended a meeting in San Diego with the United Nations Working Group Against Arbitrary Detention, where she presented a talk about the current conditions in NWDC. In March 2017, she testified before the IACHR about the conditions faced inside NWDC. In 2017, she organized and carried out several "resistance workshops" across Washington to educate the immigrant community about ICE's and DHS's February 2017 memos on enforcement implementation, namely Executive Order 13768 ("Enhancing Public Safety in the Interior of the United States," published January 30, 2017), and then-DHS Secretary John Kelly's implementing memorandum ("Enforcement of the Immigration Laws to Serve the National Interest," signed February 20, 2017),

48.     Mora-Villalpando is also regularly featured and invited to comment on state and local news items on immigration detention, deportation and enforcement. She has also written news articles highlighting her work as an undocumented activist.

49.     In 2014, it became clear that ICE was tracking Mora-Villalpando. On August 4, 2014, she received a notification from LinkedIn, a profession-oriented social networking

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 10
4828-9634-0601v.1 0201359-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

service, that Bryan Wilcox, then deputy field office director at ICE Seattle, had viewed her profile. On November 3, 2014, Mora-Villalpando received another notification that the "Policy/Program Administrator at US Immigration and Customs Enforcement" had viewed her LinkedIn profile.

50.     On December 20, 2017, Mora-Villalpando received a Notice to Appear at her home address.

51.     On January 26, 2018, Mora-Villalpando received from Senator Maria Cantwell's office a copy of her I-213, a document that ICE uses to record its evidence against a person against whom it is initiating removal proceedings. Dated December 7, 2017, the I-213 notes Mora-Villalpando's "extensive involvement with anti-ICE protests and Latino advocacy programs" and that she "has become a public figure." The I-213 contains only one piece of evidence: a media interview that she gave to "Whatcom News."

52.     On February 13, 2018, Mora-Villalpando discovered that the Washington State Department of Licensing ("WA-DOL") provided her address to ICE upon ICE's request. On February 14, 2018, WA-DOL sent her a copy of their e-mail to ICE, which was addressed to the same ICE officer who signed her I-213, Timothy Black.

53.     Mora-Villalpando has dedicated her life to the fight for immigrant justice, demanding an end to detention and deportation. None of the usual triggers for deportation—such as contact with the police, raids, or prior deportations—apply in her case. ICE only knows about her because of her political work.

## II.     ICE's Retaliation Has Chilled Immigrants' Exercise of First Amendment Rights

### A.     NWDC Resistance

54.     In the spring of 2014, a group of undocumented activists founded NWDC Resistance after immigrant detainees in NWDC, an ICE detention facility, initiated a hunger strike to protest their detention and inhumane conditions at the facility.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 11
4828-9634-0601v.1 0201359-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

55.     Today, NWDC Resistance is aimed at dismantling an immigration system that profits from the separation of families and exploitation of undocumented communities. The organization fulfills its mission by supporting hunger strikes, organizing communities, working with families, accompanying immigrants to court and ICE check-ins, running campaigns related to stopping deportations, protesting ICE, engaging the media, and making the public aware of ICE's practices.

56.     NWDC, a private for-profit facility owned and operated by the GEO Group, is one of the largest detention centers in the country, with a capacity to hold up to 1,575 immigrants. People arrive at NWDC following transfer from local law enforcement custody, immigration raids, or transfer from the nation's borders. Up to 200 people, mostly women, many seeking asylum, are transferred from the U.S.-Mexico border to NWDC each month.

57.     NWDC Resistance's members include documented and undocumented immigrants, some of whom are detained at NWDC, others of whom are family members of detainees, and all of whom are concerned about immigration enforcement, detentions, and deportations because they or their family are at risk of deportation.

58.     Between 2014 and 2018, NWDC Resistance supported or helped organize thirteen hunger strikes in the NWDC and two hunger strikes in a protest encampment outside the facility. They supported the hunger strikers by sharing their stories with the public, through actions and media work, and by putting money in their commissary accounts so that they could make phone calls to share their stories with the outside world

59.     Between 2014 and present, NWDC Resistance instituted regular solidarity days outside NWDC aimed at shedding light on all parties implicated in the abuses against immigrant detainees, and at giving non-immigrant communities, including the Coalition of Anti-Racist Whites ("CARW"), the opportunity to participate and join efforts to end deportations and detentions. These events, frequent in 2017, became less frequent as NWDC Resistance concentrated its efforts on fighting Mora-Villalpando's deportation in 2018.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 12
4828-9634-0601v.1 0201359-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

60.     As part of these events, NWDC Resistance has spoken with family members visiting loved ones inside the detention facility to learn about conditions, and to bring those individuals, many of whom are undocumented immigrants, into advocacy work. These solidarity days also make a public show of support for detainees, and they often attract media attention.

61.     NWDC Resistance has helped maintain resistance efforts inside NWDC by reporting on abuses. Examples include NWDC denying a detainee with a cancerous tumor access to surgery, holding a detainee in solitary confinement for over a year, denying the release of over sixty Cuban asylees even though most had received determinations that they had a credible fear of persecution in Cuba, and refusing to fix broken air conditioning in a pod for weeks.

62.     Since late 2017, ICE's targeting of immigrant rights activists such as Mora-Villalpando has significantly reduced NWDC's capacity to fulfill its mission. NWDC has had to shift its focus to helping defend Mora-Villalpando. For example, NWDC Resistance has organized a legal defense committee, which has recruited and worked with lawyers to coordinate political actions that operate alongside legal court dates and legal filings; diverted donations to the removal defense; helped Mora-Villalpando prepare for deportation professionally and personally; organized rallies to support Mora-Villalpando; and coordinated a press strategy to publicize how she is fighting her removal case.

63.     The organization's members have reduced their participation in activities and meetings because they fear retaliation from ICE. In particular, two undocumented leaders in the organization, who have attended dozens of gatherings combined and spoken to the news media, no longer attend any gatherings or ever speak to the media.

64.     In the fall of 2017, NWDC Resistance organized a retreat in which they had planned a "Road to Detention" campaign where they intended to march in protest of NWDC and ICE between Tacoma and the northern border. The entire NWDC Resistance team planned

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 13
4828-9634-0601v.1 0201359-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1    to work on this event, which would have involved walking from Blaine to Tacoma and taken

2    hundreds of hours of work.  NWDC Resistance had to drop this plan entirely because Mora-

3    Villalpando was placed in removal proceedings, causing the organization to divert its resources

4    to confronting that challenge.

5           65.     NWDC has also received less information from detainees inside NWDC as

6    consequence of ICE's activities. NWDC Resistance gains information from detainees, which

7    they use to promote media stories and public campaigns, through telephone calls, funded by

8    donations to commissary accounts by NWDC Resistance. Activities to support targeted

9    activists have displaced trips to NWDC to meet with detainees to learn about their experiences

10   inside the detention center. NWDC Resistance members, including Mora-Villalpando, have

11   been less able to deposit funds into commissary accounts and at times been unable to answer

12   the phone since they have been organizing in relation to Mora-Villalpando's removal

13   proceedings. As a result, they get less information about conditions inside the facility and are

14   less able to transmit these messages to a public audience.

15          66.     For example, NWDC Resistance members answered fewer phone calls from

16   detainees during the February 2018 hunger strike because they were focused on Mora-

17   Villalpando's case. They were unable to follow up with some hunger strikers who were

18   reportedly beaten by guards, with the exception of one individual for whom they found counsel.

19   NWDC Resistance missed an opportunity to educate the public and pressure GEO with these

20   additional stories. Mora-Villalpando plays a key role in providing this support to hunger

21   strikers because detainees trust and engage with activists who are undocumented themselves.

22          67.     Since Mora-Villalpando was placed in removal proceedings, some members of

23   NWDC Resistances have stopped attending regular meetings or actions. Even during protests

24   and actions in which undocumented members do attend, they do not engage in certain frontline

25   activities. In June 2018, NWDC Resistance organized an action blocking traffic in front of the

26   Seattle ICE office to highlight the collaboration between ICE and the Seattle Police

27

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 14
4828-9634-0601v.1 0201359-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Department. While nine NWDC Resistance members took part in the action blocking traffic, Mora-Villalpando and at least two other undocumented members remained on the sidewalk because they feared ICE retaliation.

68.     NWDC Resistance has also not been able to effectively connect detainees in NWDC with media outlets since ICE's retaliation began. In the past, current and former detainees would regularly speak with the media using their names and telling their stories. In 2018, detainees at NWDC and individuals who have been released from detention have been less likely to respond to NWDC Resistance's requests to respond to media inquiries. When individuals do respond to NWDC Resistance's media requests, they only agree if they can speak anonymously, such as by using only initials and having their voice altered or face blurred. NWDC Resistance no longer responds to media requests where reporters are asking to speak with current or former detainees because NWDC Resistance knows that they can no longer recruit those people to serve as spokespeople due to their fear.

69.     NWDC Resistance's members face the threat of targeted surveillance and deportation proceedings for engaging in constitutionally protected speech, as demonstrated by ICE's targeting of Mora-Villalpando and other advocates. NWDC Resistance's mission depends on undocumented persons speaking out, and ICE's practice of targeting such persons therefore compromises NWDC Resistance's mission.

**III.     ICE's Retaliation In Violation of First Amendment Has Required Allies to Divert Scarce Resources and Has Frustrated Their Missions**

**A.     Coalition of Anti-Racist Whites**

70.     CARW's mission is to undo institutional racism and white privilege through education and organizing in white communities and active support of anti-racist, people of color-led organizations.

71.     CARW members believe that as recipients of white privilege, they have a special responsibility to work toward racial justice on an individual, collective, and institutional

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

level by educating white communities and mobilizing them to support people of color-led organizing.

72.     CARW's Migrant Justice Solidarity group works against the injustices of the immigration detention and deportation systems and for change that promotes the rights and dignity of all persons by following the leadership of undocumented immigrant activists.

73.     To support the Washington movement against immigration enforcement and detention, CARW provides logistical support for immigrant-led events, and amplifies the voices of immigrant activists by mobilizing other white U.S. citizens to get involved in the fight. They ask undocumented activist leaders what those leaders need and do those things. CARW's agenda is expressly set by undocumented activist leaders.

74.     For example, CARW members support logistics for immigrant-led events at monthly solidarity days at NWDC under the leadership of Mora-Villalpando, NWDC Resistance, and other undocumented immigrant activists. These events highlight the injustice of immigration detention. They bring public attention, including media coverage, to the abuses inside the detention facility and the brave resistance of hunger strikes among the detainees. These goals are set by undocumented activist leaders, such as Mora-Villalpando.

75.     The solidarity days are important because, in addition to the public attention they draw to detention conditions, they also provide an entry point for families of detainees to join the organizing work and become new sources of undocumented leadership.

76.     At the solidarity days, CARW members help speak with families who are visiting loved ones inside the facility. Through these conversations, they learn about the conditions inside the facility, including mistreatment and medical neglect. They also learn about detainee hunger strikes. The events attract media coverage and draw public attention to the conditions at NWDC.

77.     CARW welcomes detainee families to join the organizing work by participating in future events, including media events, which are designed to make a public demonstration to

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 16
4828-9634-0601v.1 0201359-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1    NWDC and GEO that the public is watching their actions and holding them accountable. Some

2    of these family members become new activist leaders for the movement.

3        78.    CARW members also mobilize community members to support immigrants at

4    their removal hearings or accompany them to their ICE check-in meetings so that those

5    immigrants feel secure and loved by the community in difficult and frightening circumstances,

6    and again, so that ICE understands that the public is watching their actions.

7        79.    Since Mora-Villalpando has been placed in removal proceedings in retaliation

8    for her immigrant rights activities, CARW members have had to divert significant resources to

9    supporting her case. They have provided logistics and support for three rallies on her behalf.

10       80.    In June 2018, CARW was unable to host a solidarity day at NWDC because

11   they were too busy organizing support and logistics for a rally on the day of Mora-

12   Villalpando's removal proceedings in Seattle on June 26, 2018.

13       81.    Dozens of families visit the detention center each weekend, so CARW lost the

14   opportunity to speak to dozens of individuals that otherwise would have passed by their

15   canopy, and they lost the opportunity to learn about those individuals' stories, elevate those

16   stories in the public eye and in the media, and recruit these individuals to participate in

17   advocacy.

18       82.    When CARW missed the June 2018 solidarity day, it also was unable to fulfill

19   its commitment to accompany an immigrant to his ICE check-in meeting that same day.

20       83.    CARW relies on undocumented immigrant rights activists because CARW's

21   entire mission is predicated on following the leadership of those activists. Without them,

22   CARW would cease to exist because it is anathema to their mission for white people to make

23   decisions about the direction of their activism. Those decisions are made by the undocumented

24   activists. These undocumented activists have prioritized elevating the stories of detainees at

25   NWDC by drawing public attention and media coverage and supporting immigrants by

26

27

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 17
4828-9634-0601v.1 0201359-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main - 206.757.7700 fax

accompanying them to ICE check-ins and removal hearings, and to send a message to ICE that people are watching what the agency is doing.

84.     For this reason, if an undocumented immigrant rights activist is targeted by ICE, CARW's mission is undermined, and they must drop their normal activities and support the targeted activist to protect her from deportation.

85.     ICE's threat to undocumented activists frustrates its mission because it is a threat to CARW's very existence.

**B.      Detention Watch Network**

86.     DWN is the only national network that focuses exclusively on immigration detention and deportation issues, is a go-to resource on detention issues, and is known as a critical national advocate for just policies that promote an eventual end to immigration detention.

87.     As a member-led network, DWN unites diverse constituencies to advance the civil and human rights of those impacted by immigration detention and deportation. DWN members, many of whom are directly affected by detention and deportation policies, are community organizers, advocates, social workers, lawyers, doctors, clergy, students and formerly detained immigrants and their families. They are engaged in individual case and impact litigation, documenting conditions violations, local and national administrative and legislative advocacy, community organizing and mobilizing, education, and providing social services.

88.     DWN and its members have engaged in significant public advocacy regarding the requested increase in funding for immigration enforcement. For example, in the spring of 2017, DWN mounted a campaign against the Trump administration's request for $3 billion in additional DHS funding for fiscal year 2017. After conducting extensive education with their membership, DWN helped organize a large petition delivery to Congress and participated in outreach to get Congress members to commit to vote against the funding request. DWN staff

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 18
4828-9634-0601v.1 0201359-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1    worked with members and individuals directly impacted by detention to put pressure on

2    legislators. In the final negotiated funding bill, the administration received some funding, but

3    significantly less than requested. They also saw a momentous win with the removal of the

4    detention bed quota from the final bill, something DWN has been campaigning for since 2013.

5         89.    Following this largely successful experience, DWN launched the #DefundHate

6    campaign in August 2017, which had two primary goals: to push back against the massive

7    increases in immigration enforcement funding that the administration has continually

8    requested, and to get a critical mass of Congress members on the record calling for cuts in

9    funding for CBP and ICE (rather than merely opposing further expansion).

10        90.    Within the last year, DWN has also engaged in significant public advocacy

11   around deaths inside immigration detention facilities, organizing around the celebration of the

12   Day of the Dead. In late October and early November of 2017, DWN members held 16 vigils

13   and processions honoring the lives of the 22 individuals who have died in detention since

14   October 1, 2015. DWN accompanied these actions with a demand that ICE conduct an

15   immediate review of the deaths that occurred in ICE custody in fiscal years 2016 and 2017 and

16   publicly release the findings. Groups also met with their Congress members to solicit support in

17   pressuring ICE.

18        91.    DWN also regularly engages in rapid response public advocacy on individual

19   cases or detention-related incidents. Some recent examples of this type of public advocacy

20   include supporting the hunger strikes at the detention facilities in Adelanto, CA and Tacoma,

21   WA; the release of Jesus Enrique Rodriguez Mendoza, a gay man who is HIV positive and has

22   protested the poor handling of his medical conditions at the ICE-run El Paso Processing Center;

23   and the #GiveMateoBack campaign, an effort to reverse the wrongful separation of a small

24   child and his father, José Demar Fuentes, upon their entry to the United States.

25        92.    Public advocacy is critical to all these campaigns. DWN relies on its members to

26   be able to advocate and advance the goals of these campaigns.

27

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 19
4828-9634-0601v.1 0201359-000001

93.     The selective enforcement of immigration laws has a significantly negative impact on DWN's membership and is also extremely detrimental to the mission and purpose of their organization. By targeting DWN members and other activists who advocate for urgently needed changes to the detention and deportation system, ICE's actions have burdened DWN's mission in multiple ways and forced it to divert valuable resources away from its usual activities.

94.     Over the last few months, DWN has spent considerable time and resources tracking the escalating practice of targeting immigrant rights activists for enforcement proceedings based on their advocacy, consulting their membership on the best response, working with their members to develop individualized emergency plans, and supporting their members in thinking through how they want to engage in public advocacy given the escalated risk.

95.     DWN, which has a staff of eight, has also diverted its limited staff time and capacity to mobilize DWN's members and allies around action alerts for each of the affected activists and to support engagement with the Congressional representatives of the activists who have been targeted.

96.     Additionally, DWN held a press conference and rally on January 19, 2018 in front of the National Archives (where the Constitution, including the First Amendment, is physically housed), in collaboration with targeted activists from New York, Washington, and Colorado, to draw attention to the connection between various cases and their First Amendment implications. DWN also helped host a press briefing on this same issue on January 29, which also included the retaliatory targeting of humanitarian aid provided by No More Deaths and other members of the National Sanctuary Movement. DWN has also done extensive media work to educate and engage reporters about what is happening.

97.     Mora-Villalpando is a longtime DWN member and leader, specifically through her leadership of the NWDC Resistance. For years, she has played an important leadership role

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF ˙ 20
4828-9634-0601v.1 0201359-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

within DWN. For example, she was the primary presenter at a DWN event in January 2018 that sought to train more than 20 other DWN members on some innovative practices used by NWDC Resistance, and has regularly been a trainer, speaker and presenter at other DWN events.

98.    Ragbir is a longtime DWN member and leader. For years, Ragbir has played an important leadership role within DWN. For example, he was a presenter at a spokesperson training DWN held last summer for more than 30 other DWN members, and has regularly been a trainer, speaker and presenter at other DWN events.

99.    Pablos is a DWN member and leader. In May, Pablos spoke on a plenary panel at the DWN National Member Conference. She has also played a leadership role in developing the cohort of DWN members who were previously detained.

100.    DWN's mission is to expose and challenge the injustices of the immigration detention and deportation system and advocate for profound change that promotes the rights and dignity of all persons. As part of this work, DWN believes that the people who have been directly affected by the detention system—including formerly detained people and their families—are best positioned to help understand the injustices of the existing system, to identify possible solutions, and to develop strategies to advance those solutions. Given this, it is imperative that those same individuals—who are more likely to be at risk of retaliatory and selective enforcement and re-detention by ICE—be able to continue their work. When they are unable to do so, DWN's mission is frustrated.

101.    As DWN raises its profile, including through increasing participation in impact litigation and increasingly sophisticated and coordinated public advocacy, the risks of its leaders and members being targeted is only increased. Indeed, four DWN members have been placed in removal proceedings. When DWN's members and leaders are targeted for deportation in response to their protected speech, as in the examples of Mora-Villalpando, Ragbir, Montrevil, and Pablos, DWN's mission and existence are threatened. DWN's members and

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 21
4828-9634-0601v.1 0201359-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1    leaders fear they will suffer similar targeting if they engage in constitutionally protected speech

2    regarding immigration reform.

3         102.    The selective targeting of DWN members and leaders (including Mora-

4    Villalpando, Ragbir, Montrevil, and Pablos) as well as other activists within the broader

5    movement, has led to an increased dedication of resources to defending these members,

6    including through policy work, organizing and communications. This diversion of resources

7    away from their focus on the immigration detention system itself, and toward selective

8    enforcement by ICE, has impeded DWN's ongoing work to monitor and expose ongoing

9    abuses in immigration detention, to advance positive policies and legislation, and to increase

10   the size and capacity of its network.

11        103.    On January 18 and 19, 2018, DWN hosted a 2-day planning meeting for a

12   campaign, called "ICE on Trial," with the design of planning locally-led public tribunals at

13   immigration detention centers across the country to symbolically put ICE "on trial" for the

14   harms it has inflicted on the immigrant community.

15        104.    Due to the targeting of Mora-Villalpando and other activists, a significant

16   portion of that planning meeting was diverted to discussing ways to address selective

17   enforcement of immigration laws against immigrant activists and providing emotional support

18   and concrete emergency plans to activists fearing retaliation. The meeting devoted time to

19   discussing the recent retaliation against Mora-Villalpando, Ragbir, and Montrevil, and invited

20   Mora-Villalpando to discuss her case and receive support and guidance from the group at large.

21   DWN updated people on what was happening in Mora-Villalpando's case, including planning

22   what people should do if ICE executed copycat arrests of activists. This time would otherwise

23   have been spent planning the "ICE on Trial" events, and thus DWN's resources were diverted.

24        105.    Throughout the spring of 2018, DWN supported local activists in hosting their

25   "ICE on Trial" tribunals at immigration detention centers across the country. These activities

26   were inspired by the work that NWDC Resistance and Mora-Villalpando had done in

27

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 22
4828-9634-0601v.1 0201359-000001

1    Washington State. DWN intended that Mora-Villalpando would be a key mentor in these

2    actions, but she was unable to devote as much time to these tribunals because she was busy

3    preparing a defense for her own retaliatory removal proceedings. Specifically, Mora-

4    Villalpando planned to attend tribunals in Gadsden, Alabama on April 21, 2018, and in

5    Oakland, California on May 5, 2018, but had to cancel her appearances.

6           106.   Additionally, in advance of each of these ICE on Trial events, and in advance of

7    a DWN conference in Denver, Colorado on May 17-19, 2018, DWN staff was forced to have

8    time-consuming conversations with undocumented activists to discuss the risk of traveling to

9    those tribunals and the conference, and the risk of speaking to the media, given ICE targeting of

10   activists. DWN staff spoke to at least eight activists, spending an average of one hour on each

11   conversation. Absent ICE targeting of immigrant rights activists, these conversations would

12   have been unnecessary.

13                                    **Claim for Relief**

14                  **First Cause of Action: Violation of the First Amendment**

15          107.   Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth in this

16   Count.

17          108.   The First Amendment to the United States Constitution guarantees Plaintiffs the

18   rights to speak freely, to associate freely, and to receive information.

19          109.   Plaintiffs exercise these rights when they speak about or organize against United

20   States policies on immigration, immigrant detention, and deportation.

21          110.   Defendants' have targeted members of NWDC Resistance who exercise their

22   First Amendment right to speak about or organize against United States immigration policies.

23          111.   These practices have silenced undocumented members of NWDC Resistance

24   and resulted in decreased group membership.

25          112.   These practices have also resulted in the resignation of two former NWDC

26   Resistance leaders.

27

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF · 23
4828-9634-0601v.1 0201359-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

113.     These practices have frustrated NWDC Resistance's goal of raising awareness about issues relating to United States immigration policies, including NWDC, by decreasing their media presence and undermining their core advocacy strategy.

114.     This is a violation of NWDC Resistance's rights to speak, assemble, and associate.

115.     Defendants' retaliatory practices have forced CARW and DWN to divert significant resources to the protection and defense of immigrant rights activists at the cost of fulfilling those organizations' stated missions to speak out on political issues.

**Second Cause of Action: Violation of the Due Process Clause of the Fifth Amendment**

116.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth in this Count.

117.     Plaintiffs have a liberty interest under the Due Process Clause in speaking with, receiving information from, and associating with undocumented immigrants.

118.     Defendants' retaliatory practices violate Plaintiffs' substantive due process rights because they further no legitimate purpose, much less a compelling government interest.

**Third Cause of Action: Violation of the Administrative Procedure Act**

119.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth in this Count.

120.     This Court has jurisdiction to review the claim and provide relief to Plaintiffs pursuant to 5 U.S.C. §§ 701-705.

121.     ICE's pattern and practice of selectively enforcing immigration laws against outspoken immigrant rights activists is, on information and belief, the realization of a policy statement prioritizing immigration enforcement against vocal immigration activists with the intention of stifling dissent.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 24
4828-9634-0601v.1 0201359-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

122.    ICE's policy of selectively enforcing immigration laws against outspoken immigrant rights activists violates the First and Fifth Amendments to the United States Constitution.

123.    ICE's policy of selectively enforcing immigration laws against outspoken immigrant rights activists violates established Executive Orders and agency policies, including but not limited to Executive Order 13768 ("Enhancing Public Safety in the Interior of the United States," published January 30, 2017), and the DHS Secretary implementing memorandum ("Enforcement of the Immigration Laws to Serve the National Interest," signed February 20, 2017), setting priorities for immigration enforcement, none of which permit using immigration enforcement to retaliate against immigrant rights activists for their protected political speech.

124.    It additionally violates Executive Order 13798 ("Promoting Free Speech and Religious Liberty," signed May 4, 2017), which directs all federal agencies to "respect and protect the freedom of persons and organizations to engage in religious and political speech."

125.    ICE's policy of selectively enforcing immigration laws against outspoken immigrant rights activists is arbitrary, capricious and otherwise not according to law, and contrary to the constitutional rights of Plaintiffs, in violation of 5 U.S.C. § 706.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and:

   a.  Declare that ICE's policy of retaliatory enforcement of the immigration law against activists based on their protected political speech about U.S. immigration law violates the First Amendment;

   b.  Enter a permanent injunction restraining Defendants on a nationwide basis from selectively enforcing the immigration law against any individual— including, without limitation, through investigation, surveillance, detention, deportation, or any other adverse enforcement action—based on the

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF ˉ 25
4828-9634-0601v.1 0201359-000001

1   individual's protected political speech about U.S. immigration law and

2   policy;

3      c.   Award Plaintiffs costs and reasonable attorneys' fees; and

4      d.   Order such other relief as this Court may deem just and proper.

5   Respectfully submitted,

6      DATED this 23rd day of October, 2018.

7

8                    Davis Wright Tremaine LLP
                 Attorneys for Plaintiffs

9

10                    By */s/ Ambika K. Doran*
                    Bruce E.H. Johnson, WSBA #7667

11                       Ambika K. Doran, WSBA #38237
                    Max Hensley, WSBA #47030

12                       Robert E. Miller, WSBA #46507
                    Rachel H. Herd, WSBA #50339

13                       1201 Third Avenue, Suite 2200
                    Seattle, WA  98101-3045

14                       Telephone: 206-757-8030
                    Fax: 206-757-7030

15                   E-mail: brucejohnson@dwt.com,
                ambikadoran@dwt.com, maxhensley@dwt.com,

16                   robertmiller@dwt.com, rachelherd@dwt.com

17                    NATIONAL IMMIGRATION PROJECT OF THE
                 NATIONAL LAWYERS GUILD

18                       Elizabeth Simpson,* NC # 41596

19                       Khaled Alrabe,* NY Bar Reg. # 5542311
                    89 South Street # 603

20                       Boston, MA 02111
                    617-227-9727

21                       617-227-5495 (fax)
                    elizabeth@nipnlg.org

22                       khaled@nipnlg.org

                * *pro hac vice* applications forthcoming

23

24

25

26

27

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 26
4828-9634-0601v.1 0201359-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax