HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NWDC RESISTANCE and
COALITION OF ANTI-RACIST
WHITES,

                Plaintiff,

    v.

IMMIGRATION & CUSTOMS
ENFORCEMENT, RONALD
DONATO VITIELLO, in his official
capacity as Acting Director of
Immigration and Customs Enforcement;
and KEVIN MCALEENAN, in his
official capacity as the Acting Secretary
of Homeland Security,

                Defendant.

CASE NO. 3:18-cv-5860-RBL

ORDER ON MOTION TO DISMISS
UNDERTHE FIRST-TO-FILE RULE
OR ALTERNATIVELY TO STAY
CONSIDERATION

**INTRODUCTION**

THIS MATTER is before the Court on Defendants' Motion to Dismiss under the First-to-File Rule or Alternatively Stay Consideration. Dkt. #19. This case was brought by two immigrant rights associations, La Resistencia (formerly "NWDC Resistance") and the Coalition of Anti-Racist Whites (CARW), to challenge Immigration & Customs Enforcement's alleged targeting of immigration activists. However, a previously-filed New York case, *Ragbir v. Vitiello*

ORDER ON MOTION TO DISMISS UNDERTHE
FIRST-TO-FILE RULE OR ALTERNATIVELY TO
STAY CONSIDERATION - 1

*et al.*, 1:18-cv-01159 (S.D.N.Y.), also challenges the same enforcement pattern by ICE. Both cases seek to enjoin ICE's targeting on a national basis.

Because the New York case predates this one, ICE argues that this case must be dismissed or stayed pursuant to the first-to-file rule. According to ICE, both cases involve similar parties and claims, making the rule applicable. Plaintiffs (collectively "the Associations") respond that the rule does not apply because none of the plaintiffs in the current case overlap with the New York action. They also contend that the claims at issue here differ substantially from those in *Ragbir*.

For the following reasons, the Court DENIES ICE's Motion.

## BACKGROUND

**1.    The Current Lawsuit**

This case was originally filed on October 23, 2018. The plaintiffs, La Resistencia and CARW, are Northwest-based associations dedicated to issues related to immigration, including the detention and deportation of undocumented individuals. The Associations' First Amended Complaint (FAC) alleges that ICE has "engaged in a pattern and practice of selectively enforcing immigration laws against outspoken immigrant rights activists who publicly criticize U.S. immigration law, policy, and enforcement." Dkt. #13 at 3. The FAC goes on to describe specific instances of ICE targeting activists, including Ravidath Ragbir, a plaintiff in the New York case, and Maru Mora-Villalpando, a co-founder and leader of La Resistencia.

The FAC goes on to explain how ICE's actions have harmed the Associations. According to the FAC, ICE's decision to place Mora-Villalpando in removal proceedings robbed La Resistencia of one of its leaders and forced the association to curb its regular activities to assist in Mora-Villalpando's defense. Other members of La Resistencia have reduced their

ORDER ON MOTION TO DISMISS UNDERTHE
FIRST-TO-FILE RULE OR ALTERNATIVELY TO
STAY CONSIDERATION - 2

participation in the origination for fear of retaliation. ICE's actions have also decreased La Resistencia's ability to get former detainees to respond to media inquiries. CARW has similarly been forced to cancel specific events to respond to ICE's targeting of activists like Mora-Villalpando. CARW's mission involves following the lead of undocumented activists, making ICE's targeting of those activists a direct threat to CARW's existence.

The FAC alleges claims under four legal theories: (1) the First Amendment, (2) the Due Process Clause, (3) the Administrative Procedure Act (APA), and (4) the Equal Protection Clause. The Associations ask the Court to issue a declaration that ICE's pattern of selective enforcement is unlawful and permanently enjoin such enforcement nationwide.

**2.       The New York Lawsuit, *Ragbir v. Vitiello, et al.***

On February 9, 2018, several months before the Associations filed their case, *Ragbir* was filed in the Southern District of New York. *Ragbir* involved very similar allegations about ICE targeting immigrant rights activists—in fact, the FAC often used language identical to the current case to describe ICE's conduct toward many of the same activists, such as Ragbir and Mora-Villalpando. In addition to Ragbir as an individual plaintiff, the New York case also included the following organizational plaintiffs: the New Sanctuary Coalition of New York City, CASA, Detention Watch Network (DWN), the National Immigration Project of the National Lawyers Guild (NIPNLG), and the New York Immigration Coalition. DWN is an umbrella organization comprised of numerous individual and organizational members, including Ragbir, Mora-Villalpando, and La Resistencia.

In addition to the individual harm suffered by Ragbir, the *Ragbir* FAC alleges some similar types of harm the current case, albeit directed at different organizations. NIPNLG, for example, claims that it had to divert its resources in order to defend Mora-Villalpando after she

ORDER ON MOTION TO DISMISS UNDERTHE
FIRST-TO-FILE RULE OR ALTERNATIVELY TO
STAY CONSIDERATION - 3

was placed in removal proceedings. DWN alleges that it has spend considerable resources addressing ICE's targeted enforcement and diverted staff to mobilize members and hold press conferences.  DWN also alleges that ICE's actions have harmed its members like Ragbir and Mora-Villalpando.

Finally, the *Ragbir* FAC states two claims under the First Amendment for retaliation and content, viewpoint, and speaker discrimination. Like the Associations, the *Ragbir* plaintiffs request nation-wide declaratory and injunctive relief.

## DISCUSSION

### 1.    First-to-File Rule

The first-to-file rule allows a district to dismiss, stay, or transfer a case if it involves substantially similar parties and issues as another case that was filed first. *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015); *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982). The rule exists to "maximize economy, consistency, and comity" and "should not be disregarded lightly." *Kohn*, 787 F.3d at 1240 (internal quotation omitted).

Courts analyze three factors to determine whether the first-to-file rule applies: "chronology of the lawsuits, similarity of the parties, and similarity of the issues." *Kohn*, 787 F.3d at 1240. However, the first-to-file rule is "not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter*, 678 F.2d at 95. "The most basic aspect of the first-to-file rule is that it is discretionary." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). In some circumstances, the rule may be dispensed with for equitable reasons. *Barapind v. Reno*, 72 F. Supp. 2d 1132, 1146 (E.D. Cal. 1999).

ORDER ON MOTION TO DISMISS UNDERTHE
FIRST-TO-FILE RULE OR ALTERNATIVELY TO
STAY CONSIDERATION - 4

*a.     Chronology of the Lawsuits*

For purposes of analyzing which case was filed first, the Ninth Circuit has held that a "federal action is commenced by the filing of the complaint . . . ." *Pacesetter*, 678 F.2d at 96 n.3. It is irrelevant that the second court may have technically gained jurisdiction over its case first because a procedural requirement, such as service of process, was not quickly met in the first case. *Id.; see also Goldfield Corp. v. Hartford Acc. & Indem. Co.*, No. 14-CV-0134-TOR, 2014 WL 4060317, at *5 (E.D. Wash. Aug. 15, 2014) (holding that a pending motion to dismiss for lack of subject matter jurisdiction in the prior suit does not alter the chronological analysis). However, if there is "jurisdictional uncertainty" in the earlier-filed action, a court should take that into consideration when deciding whether to dismiss, stay, or transfer the case. *See Alltrade*, 946 F.2d at 628.

Here, the chronology factor is easily resolved in favor of applying the rule. The complaint in *Ragbir* was filed on February 9, 2018, and the complaint in this case was filed on October 23, 2018. Plaintiffs urge the Court to ignore when the complaints were filed and focus instead on the dates that jurisdiction became certain, but this is not persuasive.[1] It is true that some other circuits have taken this approach to the first-to-file rule. *See, e.g., Jefferson Ward Stores, Inc. v. Doody Co.*, 560 F. Supp. 35, 37 (E.D. Pa. 1983) ("It is not the first case filed which has precedence, but the court first obtaining jurisdiction of the parties and the issues which should proceed with the litigation.") (internal quotation omitted). However, the Ninth Circuit has not followed suit and suggested in *Alltrade* that jurisdictional uncertainty merely requires altering the remedy. *See* 946 F.2d at 628. The Court will not depart from that reasoning.

---

[1] Even if the Court did take this approach, it appears that the *Ragbir* plaintiffs' appeal of the district court's dismissal for lack of subject matter jurisdiction has been successful. *See Ragbir v. Homan*, 18-1597 (2nd Cir. Apr. 25 2019). This diminishes the concerns over whether *Ragbir* will be able to proceed on jurisdiction grounds.

ORDER ON MOTION TO DISMISS UNDERTHE
FIRST-TO-FILE RULE OR ALTERNATIVELY TO
STAY CONSIDERATION - 5

*b.*        *Similarity of the Parties*

For the first-to-file rule to apply, there needs to be "substantial similarity of parties" in the two actions but the parties do not need to be identical. *Kohn*, 787 F.3d at 1240. A single plaintiff thus may not escape the rule merely by adding or subtracting a defendant in the second case. *See id.* Similarly, parties may be substantially similar where the party in the previous action was absorbed in a corporate merger. *See Music Grp. Servs. US, Inc. v. inMusic Brands, Inc.*, No. C13-182MJP, 2013 WL 1499564, at *2 (W.D. Wash. Apr. 11, 2013). The rule can also apply where there is significant overlap between classes of individuals represented in multiple cases. *See Ctr. v. Pompeo*, No. C18-1122JLR, 2018 WL 6523135, at *6 (W.D. Wash. Dec. 12, 2018) (applying the rule where two out of three subclasses were the same); *see also Cadenasso v. Metro. Life Ins. Co.*, No. 13-CV-05491-JST, 2014 WL 1510853, at *10 (N.D. Cal. Apr. 15, 2014) (finding that the rule applied where the class representatives were different but the "class definitions in both cases are nearly identical"); *Kennedy v. Full Tilt Poker*, No. CV0907964MMMAGRX, 2012 WL 13071634, at *10 (C.D. Cal. Aug. 24, 2012) (finding that a proposed class action and a government forfeiture action sought to reimburse substantially the same individuals).

On the other hand, courts are more hesitant to apply the first-to-file rule where there are significant differences between the individual parties involved in the cases. In *Prescott v. CVS Health Corp.*, for example, the court declined to apply the rule where only some of the defendants in the two actions were the same, notwithstanding that both cases involved similar classes of plaintiffs. No. C17-803RSL, 2017 WL 5756873, at *2 (W.D. Wash. Nov. 28, 2017). *Dubee v. P.F. Chang's China Bistro, Inc.* similarly found that the parties were too distinct even though the putative class in the second action could potentially encompass the individual

plaintiff in the first. *Dubee v. P.F. Chang's China Bistro, Inc.*, No. C 10-01937 WHA, 2010 WL 3323808, at *2 (N.D. Cal. Aug. 23, 2010).

Here, although the defendants in both actions are the same, the dissimilarity of the plaintiffs weighs against applying the first-to-file rule. The greatest point of overlap between the two cases is La Resistencia's status as a member of DWN, which is a plaintiff in the *Ragbir* case. However, unlike situations where multiple class actions seek to remedy harm to the same individuals, La Resistencia and DWN sued to vindicate their *own* rights as separate groups. The *Ragbir* FAC focuses mainly on how ICE's targeted enforcement has forced DWN itself to divert its resources to protect members and hindered the organization's mobilization efforts. Dkt. #19-3 at 55-56. While the *Ragbir* FAC does mention ICE's retaliation against DWN's "members" as a basis for one claim, this is clearly a reference to Ragbir and Mora-Villalpando rather than La Resistencia, which is not mentioned at all. *Id*. at 56, 57. The FAC in this case, in contrast, identifies the distinct ways that ICE's actions have affected La Resistencia by forcing it to cancel events, limiting its interactions with the media, and cutting off its information sources in the immigrant community. Dkt #13 at 13-15.

The size of DWN also suggests that there is little practical overlap with La Resistencia. DWN's membership amounts to nearly 100 organizations, including such prominent groups as Amnesty International and the ACLU. *See* DETENTION WATCH NETWORK: MEMBERSHIP DIRECTORY, https://www.detentionwatchnetwork.org/about/membership-directory (last visited May 27, 2019). The relationship between La Resistencia and DWN is thus a far cry from two merging corporations or two subclasses with nearly identical definitions. *See inMusic Brands*, 2013 WL 1499564, at *2; *Cadenasso*, 2014 WL 1510853, at *10. It would make little sense to

bar every single DWN member impacted by a government policy from challenging it simply because DWN has already done so.

ICE emphasizes that DWN was originally a party in this case and that NIPNLG, a party in *Ragbir*, is representing the Associations. However, the first-to-file rule focuses on the parties *currently* in the case. *See Gardner v. GC Servs., LP*, No. 10-CV-997-IEG(CAB), 2010 WL 2721271, at *5 (S.D. Cal. July 6, 2010) (focusing on the parties "at this point"); *Quinteros v. Dyncorp Aerospace Operations LLC*, No. 06-61760-CIV, 2007 WL 9700783, at *3 (S.D. Fla. May 23, 2007) (declining to apply the rule where the overlapping plaintiffs dropped out of the case). It also makes no difference that the Associations' counsel in this case is a party in *Ragbir*. *See Gardner*, 2010 WL 2721271, at *5. ICE clearly wants the Court to apply the first-to-file rule based on the potential collusion between the parties in these actions. But the first-to-file rule's purpose is not to prevent parties with common interests to coordinate lawsuits. The focus is the similarity of the parties, not the potential connections between them.

Several of ICE's other arguments about the parties bleed into analyzing the similarity of the issues. ICE makes much of the fact that both FACs describe enforcement actions against nearly the same activists and both La Resistencia and NIPNLG tie their injuries to Mora-Villalpando. But these similarities have nothing to do with the plaintiffs and defendants in the two actions. In any case, although some of the harm claimed by the plaintiffs in the two cases may stem from ICE's actions against the same individual, the form of harm is different. Mora-Villalpando is the founder of La Resistencia and a Northwest local, creating unique reasons for that organization to sue.

Finally, ICE suggests that if plaintiffs' interests align they can be treated as substantially similar parties under the first-to-file rule. Some courts have taken this approach in infringement

ORDER ON MOTION TO DISMISS UNDERTHE
FIRST-TO-FILE RULE OR ALTERNATIVELY TO
STAY CONSIDERATION - 8

disputes when a party to the first-filed suit subsequently sues a customer of the other party. *See Marshak v. Reed*, No. 96 CV 2292 (NG)(MLO), 2000 WL 33152076, at *3 (E.D.N.Y. Oct. 17, 2000). Courts have explained that such a scenario is "simply an attempt to litigate in another forum a dispute that is basically between the plaintiffs and the defendant" in the first case. *Telephonics Corp. v. Lindly & Co.*, 291 F.2d 445, 447 (2d Cir.1961). At least one court in the Ninth Circuit mentioned the principle when determining that a patent holder, who sued in the second case, was similar to their licensee, who was a defendant in the first case. *Centocor, Inc. v. MedImmune, Inc.*, No. C 02-03252 CRB, 2002 WL 31465299, at *3 (N.D. Cal. Oct. 22, 2002).

The Court will not take the seemingly-novel step of extending this approach to the present situation. There are significant differences between parties pursuing the same broad goal and parties asserting the same exact rights under a licensing agreement. While it may make sense to lump the latter parties together, equating the former would sit uncomfortably with the "deep-rooted historic tradition that everyone should have his own day in court." *See Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008). Consequently, while the litigants' goals may be relevant when analyzing the similarity of the issues, it does not bear on whether the plaintiffs in this case and *Ragbir* are substantially similar.

c.     *Similarity of the Issues*

As with the parties, "[t]he issues in both cases also need not be identical, only substantially similar." *Kohn*, 787 F.3d at 1240. When comparing the issues, courts look to whether there is "substantial overlap" between the allegations, the parties' claims, and the remedies sought. *See Pacesetter*, 678 F.2d at 95. Where the complained-of conduct is the same, slight variations in the claims will not prevent application of the rule. *See Walker v. Progressive Cas. Ins. Co.*, No. C03-656R, 2003 WL 21056704, at *3 (W.D. Wash. May 9, 2003). On the

other hand, courts may decline to apply the rule if the claims will require different legal analyses, even if the underling allegations are substantially similar. *See Brice v. Plain Green, LLC*, No. 18-CV-01200-WHO, 2019 WL 1500361, at \*1, \*13 (N.D. Cal. Mar. 12, 2019). In essence, there must be "similarity in allegations [that] would require the court to make similar determinations." *Id*. at \*13 (quoting *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1148 (E.D. Cal. 2010)).

Here, while there is a fair amount of overlap between the issues in the two cases, it is not enough to warrant applying the first-to-file rule in light of the differences between the parties. ICE correctly points out that the allegations and relief sought in the two cases are nearly the same. Both FACs describe ICE's practice of targeting immigrant rights activists—indeed, they even focus on largely the same activists using sometimes identical language. Both FACs also seek national declaratory and injunctive relief against ICE, although the first case also seeks individual relief for Ragbir.

However, there are also some important differences between the claims in the two cases. The *Ragbir* plaintiffs alleged only two claims: (1) retaliation in violation of the First Amendment and (2) content, viewpoint, and speaker discrimination in violation of the First Amendment. Dkt. #19-3 at 56-59. The plaintiffs in this case bring four claims under: (1) the First Amendment, (2) the Due Process Clause, (3) the APA, and (4) the Equal Protection Clause. Dkt. #13 at 18-20. Only the First Amendment claims substantially overlap legally, and even then the Associations' claim focuses only on ICE's targeting of La Resistencia and CARW members. The *Ragbir* claims, in contrast, involve a much larger swath of ICE's conduct affecting a much more numerous group of plaintiffs. These differences in legal analysis and scope weigh against applying the rule.

## CONCLUSION

While there is undoubtedly some overlap between this case and the *Ragbir* action, the differences between the parties and claims at issue make the first-to-file rule inapplicable. ICE's Motion to Dismiss or Stay [Dkt. #19] is therefore DENIED.

IT IS SO ORDERED.


Dated this 30th day of May, 2019.


Ronald B. Leighton
United States District Judge

ORDER ON MOTION TO DISMISS UNDERTHE
FIRST-TO-FILE RULE OR ALTERNATIVELY TO
STAY CONSIDERATION - 11