HONORABLE RONALD B. LEIGHTON

FILED RECEIVED
MAR 26 2020
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                                    DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BENJAMIN ZIELINSKI, | CASE NO. 3:19-cv-06244-RBL |
| Plaintiff, | ORDER ON MOTION TO REMAND |
| v. | DKT. # 11 |
| FIRST NATIONAL INSURANCE COMPANY OF AMERICA, | |
| Defendant. | |

THIS MATTER is before the Court on Plaintiff Benjamin Zielinski's Motion to Remand. Dkt. # 11. Zielinski filed this class action in Pierce County Superior Court and seeks to recover diminished value payments on behalf of National Union insurance policyholders. Complaint, Dkt. # 3-2. Defendant First National Insurance Company of America removed the action to federal court, partly on the basis that "the potential number of claims and class members is over 5,000 . . . [and a] claim of $1,158 multiplied by just 5,000 claims amounts to $5,790,000 in controversy." Notice of Removal, Dkt. # 3, at 8. Zielinski now challenges First National's calculation of the amount in controversy.

Under the Class Action Fairness Act (CAFA), federal courts have jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 regardless of the defendants'

citizenship. 28 U.S.C. §§ 1332, 1453. To remove a case to federal court, a defendant needs only provide "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014). However, if the plaintiff challenges the removal, "both sides submit proof and the court then decides where the preponderance lies," with the defendant bearing the burden. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198, 1199 (9th Cir. 2015). "Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Id.* at 1199.

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198. A defendant can rely on "a chain of reasoning that includes assumptions," but those "assumption cannot be pulled from thin air." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (quoting *Ibarra*, 775 F.3d at 1199).

The plaintiff remains the "master of the complaint" and any damages calculation must conform to the complaint's allegations. *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 999 (9th Cir. 2007). For example, where the plaintiff alleged a "pattern or practice of labor law violations," the defendant could not reasonably assume that the violations occurred universally. *Ibarra*, 775 F.3d at 1198-99. Rather, the asserted violation rate had to be "grounded in real evidence." *Id.* at 1199; *but see LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (holding that, where the complaint defined the class to include all truck drivers, the defendant could reasonably use the number of truck drivers during one quarter as a basis for calculating overall fuel costs).

Here, Zielinski's proposed class is defined as follows: "All SAFECO Insurance Company insureds with Washington policies issued in Washington State, where the insureds' vehicle damages were covered under Underinsured Motorist coverage, and (1) the repair estimates on the vehicle (including any supplements) totaled at least $1,000; and (2) the vehicle was no more than six years old (model year plus five years) and had less than 90,000 miles on it at the time of the accident; and (3) the vehicle suffered structural (frame) damage and/or deformed sheet metal and/or required body or paint work;" (4) excluding "claims involving leased vehicles or total losses."[1] Complaint at 9. The parties offer competing theories of damages calculations, with Zielinski's approach based primarily on data from similar class actions and First National's relying on its own statistics and general assumptions. Rather than select one calculation in its entirety, the Court determine which aspects of each is the most reliable.

First National's damages calculation is based on the declaration of Mick Stave, Assistant Vice President and Field Manager in the Auto Field Appraisal division for Liberty Mutual Insurance Company (First National's parent company). Dkt. # 15. According to Stave, First National can determine from its records the number of claims under Washington policies where the insureds' vehicle damages were covered under underinsured motorist property damage coverage and where the loss date was between November 26, 2013 and December 14, 2019. *Id.* at 3. First National can also reliably exclude claims where the vehicle was more than six years old and the claimant suffered a total loss (total losses are sent to a dedicated department). *Id.*

However, the remaining class limitations are not tracked by First National's records and are thus hard to account for without a complete file-by-file audit, which First National has not performed. To exclude repair estimates under $1000, Stave relies on First National's records of

---

[1] The class definition also excludes claims "the assigned judge, the judge's staff and family."

the total amount of loss, adjusted by the (typical) $300 deductible, the assumption being that the cost of repair and the overall loss are comparable. *Id.* at 4. This equates to claims for losses equal to or exceeding $700 ($1000 minus $300 deductible), of which First National's data reveals there are **5,300**. *Id.* To exclude cars with under 90,000 miles, Stave relies on First National's own experience that six-year-old cars almost always have less than 90,000 miles, as well as Department of Transportation statistics about the average miles driven per year. *Id.* at 4-5. Stave further uses his own experience "to reasonably conclude that when a vehicle has suffered $1,000 or more in repairs it will almost certainly have sustained either structural damage and/or deformed sheet metal and/or required body or paint work." *Id.* at 5.

Finally, although First National also does not track whether insureds' vehicles are leased, Stave refers to data from Liberty Mutual that, in California, the leased vehicle rate for insureds is about 5.3%. *Id.* This lowers the potential class size from 5,300 to **5,019**. *Id.* When this number is multiplied by Zielinski's estimated diminished value of $1,158, First National calculates that the amount in controversy is $5,812,002. Opposition, Dkt. # 14, at 8.

To support his calculation, Zielinski relies on the testimony of Bernard R. Siskin, who has provided expert testimony in similar cases in the past. Dkt. # 13. Siskin testifies that the proper method of calculating class size (and ultimately amount in controversy) involves "using computer data provided by the insurer from its own data, supplemented if necessary, when the final repair estimate data is not kept by the insurer, with data obtained from one or the three estimating data venders (CCC, Autosource, and/or Mitchell). Then sampling for factors which are not available in the computerized data can be used to reach final class size." *Id.* at 3.

But rather than using specific data from First National, Siskin began his calculation with the baseline number of 5000 claims based on First National's statement in the notice of removal

that the potential number of claims is over 5000. Siskin then whittled this number down based on the exclusions in the class definition by referring to data from prior similar class actions involving different insurers. *Id.* at 3-7. Ultimately, Siskin estimated that the amount in controversy is $4,178,064.

Here, although there are shortcomings with both parties' theories of calculation, First National bears the burden of proof and that burden has not been met. Some aspects of First National's calculation are reliable, including its use of internal statistics excluding cars by age and total loss. However, First National makes several assumptions that are unreasonable. Specifically, First National's assumptions that repair cost is equivalent to loss, that all six-year-old cars would have less than 90,000 miles, and that all claims with repairs over $1000 would require paint and body work are unsupported. Zielinski's reliance on data from different cases with different insurers has its own problems, but even if this is so, remand is the appropriate outcome when the evidence is in "equipoise." *Ibarra*, 775 F.3d at 1199. The Court therefore GRANTS Zielinski's Motion and REMANDS this case to Pierce County Superior Court.

IT IS SO ORDERED.

Dated this 26 day of March, 2020

Ronald B. Leighton
United States District Judge