HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NWDC RESISTANCE and COALITION OF ANTI-RACIST WHITES, | CASE NO. C18-5860JLR |
| Plaintiffs, | ORDER DENYING DEFENDANTS' MOTION TO DISMISS |
| v. | |
| IMMIGRATION & CUSTOMS ENFORCEMENT, et al., | |
| Defendants. | |

THIS MATTER is before the Court on Defendants Immigration & Customs Enforcement, Acting Director of ICE Matthew T. Albence, and Acting Secretary of the Department of Homeland Security Chad F. Wolf's (collectively, "ICE") Motion to Dismiss for lack of subject matter jurisdiction [Dkt. # 41]. Plaintiffs La Resistencia (formerly NWDC Resistance) and Coalition of Anti-Racist Whites are immigration advocacy organizations. They claim that ICE has a policy and practice of targeting undocumented immigration activists in retaliation for their protected speech. They do not seek to intervene in any particular removal proceeding, or to reverse any specific removal decision, but instead ask the Court to enjoin ICE's "selective enforcement" policy as unconstitutional.

ICE seeks dismissal on three grounds: (1) 8 U.S.C. § 1252(g) strips District Courts of jurisdiction over "any cause or claim" arising from decisions to commence removal proceedings, adjudicate cases, or execute removal orders; (2) 8 U.S.C. § 1252(a)(5) and (b)(9) require challenges seeking review of such decisions to be made in the appropriate court of appeals; and (3) the plaintiffs lack organizational or associational[1] standing to assert these claims on behalf of third parties. Having considered the motion, the parties' submissions concerning the motion, the relevant portions of the record, and the applicable law, the Court DENIES ICE's motion to dismiss.

## I. BACKGROUND

Plaintiffs plausibly contend that since January 2017, ICE has engaged in a policy and practice of targeting outspoken activists who publicly criticize U.S. immigration law, policy and enforcement. Their operative First Amended Complaint includes numerous[2] examples of such targeting. Maru Mora-Villalpando is the president of La Resistencia. The FAC and Mora-Villalpando's Declaration establish that she was issued a Notice to Appear because of her "anti-ICE protests." La Resistencia and Maru Mora-Villalpando claim that such tactics are discriminatory and unconstitutional, and that they have had the perhaps intended effect of disrupting and discouraging member activists and their speech. Plaintiffs plausibly claim that they rely on family members for information about detainees, and that as the result of ICE's practice, those family members are afraid to speak. Plaintiffs argue that the fear caused by selective enforcement has forced them to cancel events, limit interactions with the media, and

---

[1] Plaintiffs do not claim they have associational standing.

[2] The FAC details the detention of and commencement of removal proceedings against eleven such individuals. Plaintiffs claim it does so to demonstrate that their allegations are plausible, and in fact true. But they emphasize they do not seek to intervene in or enjoin any specific removal proceeding against any individual.

1  required them to divert resources from activism to defending members facing removal

2  proceedings.

3      Plaintiffs claim that discovery has demonstrated the accuracy of their allegations. As

4  detailed in Exhibits attached to the Declaration of Robert Miller [Dkt. #s 49 and 51], internal ICE

5  emails confirmed they believed La Resistencia and Maru Mora-Villalpando were the "instigators

6  of all the turmoil surrounding the NWDC for the past several years," [Dkt. # 51, p. 8 (Ex. A at

7  7)], and that Maru Mora-Villalpando was responsible for "almost all meaningful protests over

8  the past decade." [*Id*. at p. 16, Ex. C at 3]. ICE concluded "placing her into proceedings might

9  take away some of her clout," [*Id*. at p. 7, Ex. A at 6], even though she was otherwise a "low

10 priority" under new enforcement policies. [*Id*. at p. 15, Ex. C at 2].

11     Plaintiffs sued in October 2018, and filed their FAC in December 2018 [Dkt. # 13]. They

12 assert First Amendment and Fifth Amendment (Due Process and Equal Protection) claims. They

13 also claim that the selective enforcement policy violated applicable Executive Orders on

14 immigration and speech, and thus the Administrative Procedure Act. They seek a Declaratory

15 Judgment that ICE's selective enforcement policy violates the First and Fifth Amendments, and a

16 permanent injunction prohibiting ICE from selectively enforcing the immigration laws against

17 any individual in retaliation for protected political speech.

18     ICE moved to dismiss the complaint under the "first to file" rule, arguing that the same

19 challenge to ICE's selective enforcement policy was being litigated in an earlier-filed case,

20 *Ragbir v. Vitiello, et al.*, 1:18-cv-01159 (S.D.N.Y.). [Dkt. # 19]. Plaintiffs' FAC describes ICE's

21 treatment of Ragbir as an example of the selective enforcement at the core of its claims, but he is

22 not a plaintiff in this case. The Court determined that, despite some overlap, the parties and the

23

24

claims in the two cases were sufficiently different to avoid dismissal under the first to file rule. It denied ICE's Motion in May 2019. [Dkt. # 30].

ICE now argues that the Court does not have jurisdiction over Plaintiffs' claims, which it argues seek to interfere in removal proceedings related to Maru Mora-Villalpando and other activists identified and described in the FAC. It also argues the Plaintiffs do not have standing to challenge the allegedly unconstitutional policy.

The issues are addressed in turn.

## II. DISCUSSION

**A. Subject matter jurisdictional challenges under Rule 12(b)(1).**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6), the court construes the complaint in the light most favorable to the non-moving party. *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005); *see also Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Generally, the court must accept as true all well-pleaded allegations of material fact and draw all reasonable inferences in favor of the plaintiff. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.,* 135 F.3d 658, 661 (9th Cir. 1998).

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) if, considering the factual allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *United Transp. Union v. Burlington N. Santa Fe R. Co.*, No. C06-5441 RBL, 2007 WL 26761, at *2 (W.D. Wash. Jan. 2, 2007), *aff'd*, 528 F.3d 674 (9th Cir. 2008).

The plaintiffs bear the burden of proving the existence of subject matter jurisdiction, *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989), but they have no obligation to provide facts beyond the complaint, where, as here, defendants have introduced no evidence contesting any of the allegations. *Ryan v. Salisbury*, 382 F. Supp. 3d 1031, 1047 (D. Haw. 2019) (quoting *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009)).

**B.  8 U.S.C. § 1252(g) does not strip this Court of Subject Matter Jurisdiction over Plaintiffs' claims.**

ICE's primary argument is that 8 U.S.C. § 1252(g)'s "plain language" deprives the district courts of jurisdiction over "any cause or claim" arising from decisions to commence or execute removal orders:

> (g) Exclusive jurisdiction

> Except as provided in this section and notwithstanding any other provision of law . . . no court shall have jurisdiction to hear any cause or claim *by or on behalf of any alien arising from the decision* or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added). ICE argues Plaintiffs' claim it is "selectively enforcing" immigration law against them necessarily seeks to challenge precisely those decisions, and that the Court therefore has no jurisdiction over them. It relies on *Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471 (1999) ("*AADC*"), which involved a group of aliens targeted for removal by INS. They claimed INS was selectively enforcing immigration laws against them because they were affiliated with a "politically unpopular group," the Popular Front for the Liberation of Palestine. The *AADC* plaintiffs claimed INS's selective enforcement—commencing removal proceedings against them—violated their First and Fifth Amendment constitutional rights.

1    The Supreme Court explained that Section 1252(g) must be read narrowly, and held that

2    it eliminates jurisdiction concerning (only) three discrete actions that the Attorney General has

3    the discretion to take: "the decision or action to commence proceedings, adjudicate cases, or

4    execute removal orders[.]" *AADC*, 525 U.S. at 482-83. Because the plaintiffs sought to enjoin

5    removal proceedings that had been commenced against them, Section 1252(g) applied and it

6    deprived the District Court of jurisdiction to hear their claims.

7    ICE cites several subsequent cases similarly and consistently holding that an alien who is

8    the subject of removal proceedings cannot sue in District Court to challenge the exercise of

9    ICE's discretion to determine whether and when to carry out these three discrete, discretionary

10   actions. *See Gebreslasie v. United States Citizenship & Immigration Servs.*, 778 F. App'x 532,

11   533 (9th Cir. 2019); *Balogun v. Barr*, No. 18-56258, 2019 WL 4729845 (9th Cir. July 30, 2019);

12   and *Palacios-Bernal v. Barr*, No. 5:19-cv-01963-RGK-MAA, 2019 WL 5394019 (C.D. Cal. Oct.

13   22, 2019). Each case involved an alien plaintiff challenging one of the three actions enumerated

14   in Section 1252(g), directed against him or her. In each case, the Court held that the claim was

15   barred.

16   ICE argues that the Second Circuit confirmed this analysis in *Ragbir v. Homan*, 923 F.3d

17   53, 63-66 (2d Cir. 2019)—the case that was the basis of ICE's prior motion to dismiss. ICE

18   argues that *Ragbir* involved similar claims and many of the same individuals, and relied on the

19   same facts, as this Court recognized in its prior Order. [Dkt. # 30]. The Second Circuit held that

20   Section 1252(g) barred Ragbir's constitutional challenge to his removal in district court:

21       Here, the Government unquestionably had statutory authority to execute Ragbir's
         final order of removal, and that very conduct is the retaliation about which Ragbir
22       complains. To remove that decision from the scope of section 1252(g) because it
         was allegedly made based on unlawful considerations would allow Plaintiffs to
23       bypass § 1252(g) through mere styling of their claims. And so, we conclude that

24

ORDER DENYING DEFENDANTS' MOTION TO
DISMISS - 6

the Government's challenged conduct falls squarely within the ostensible jurisdictional limitation of § 1252(g).

*Ragbir*, 923 F.3d at 64. ICE argues that Plaintiffs' similar claims are necessarily brought on behalf of individual aliens facing removal proceedings, and similarly must be dismissed under Section 1252(g).

Plaintiffs concede *Ragbir* held that under Section 1252(g), the district court had no jurisdiction over Ragbir's claim seeking to enjoin his deportation. They argue, however, that neither the District Court nor the Second Circuit resolved whether Section 1252(g) applies to claims concerning a practice of targeting activists, and point out that the Second Circuit remanded to the District Court for evaluation of Ragbir's habeas claim based on such targeting. [Dkt. # 56 at 8 (citing *Ragbir*, 923 F.3d at 62)].

On October 5, 2020, the Supreme Court granted certiorari, vacated the judgment, and remanded *Ragbir* to the Second Circuit for further consideration in light of *Department of Homeland Security v Thuraissigiam*, 591 U.S. ___, 140 S.Ct. 1959 (2020). *Pham v. Ragbir*, 2020 WL 5882107 (October 5, 2020). *Thuraissigiam* held that 8 U.S.C. § 1252(e)(2) validly barred an asylum-seeking alien's habeas petition seeking review of the determination that he had no credible fear of persecution. The Court can therefore surmise that Ragbir's own retaliation-based habeas claim is in jeopardy.

Nevertheless, the Plaintiffs here do not seek to enjoin any specific removal proceeding. As they correctly point out, Congress did not intend Section 1252(g) to "deny any judicial forum for a colorable constitutional claim," *Webster v. Doe*, 486 U.S. 592, 603 (1988), and that *AADC* narrowly limited 1252(g)'s application to challenges to only the three discrete actions it lists: decisions to commence, decide or execute removal proceedings. They argue that it is not a bar to challenges to other ICE actions—opening an investigation or surveilling a suspected violator—

though they are surely a part of the deportation or removal process. [Dkt. # 56 at 5-6 (citing

*AADC*, 525 U.S. at 482)]. They argue that Section 1252(g) does not apply to "general collateral

challenges to unconstitutional practices and policies used by the agency." [Dkt. # 56 at 6 (citing

*Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998) (internal citations omitted))].

Plaintiffs contend that, properly and narrowly construed, Section 1252(g) does not apply

to their claims, which do not challenge any specific removal decision, but rather the

constitutionality of a policy of selectively enforcing immigration laws against aliens who speak

about immigration issues. If ICE's reading of Section 1252(g) were correct, they argue, it would

bar review of any claim that could ultimately impact a decision to commence, adjudicate, or

enforce a removal proceeding. They rely on the Ninth Circuit's decision in *Regents of the Univ.

of California v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476 (9th Cir. 2018), for the proposition

that such a broad reading is unwarranted.

In *Regents*, the University of California and other entities sought to enjoin the Trump

Administration from rescinding the Obama Administration's Deferred Action for Childhood

Arrivals ("DACA") policy, which deferred removal for aliens who came to the United States as

children. They argued that the rescission violated the APA. As it does here, the government

claimed that Section 1252(g) (and 8 U.S.C. § 1252(b)(9), discussed below) barred the claims.

The Ninth Circuit rejected the jurisdictional argument and enjoined the rescission,

holding that Section 1252(g) applies "*only* to efforts to challenge the refusal to exercise . . .

discretion *on behalf of specific aliens*." *Id*. at 503, quoting *AADC*, 525 U.S. at 485 (emphasis in

original). The Ninth Circuit held it was "quite clear" that "*AADC* reads Section 1252(g) as

responding to litigation over *individual* 'no deferred action' decisions, rather than a

programmatic shift like the DACA rescission." *Id*. (emphasis added). Plaintiffs argue that other

broader challenges to the constitutionality of the agency's practices, like theirs, are not impacted

by Section 1252(g).

After ICE filed its Motion, the Supreme Court affirmed *Regents*. [*See* Plaintiffs'

Supplemental Authority, Dkt. # 62]. Relying in part on *AADC*, it made short work of the

government's argument that Section 1252(g) deprived the District Court of jurisdiction over the

claims and the case:

> Section 1252(g) is … narrow. That provision limits review of cases "arising
> from" decisions "to commence proceedings, adjudicate cases, or execute removal
> orders." § 1252(g). We have previously rejected as "implausible" the
> Government's suggestion that § 1252(g) covers "all claims arising from
> deportation proceedings" or imposes "a general jurisdictional limitation."
> [*AADC*], 525 U.S. 471, 482 (1999). The rescission, which revokes a deferred
> action program with associated benefits, is not a decision to "commence
> proceedings," much less to "adjudicate" a case or "execute" a removal order.

*Regents of the Univ. of California v. U.S. Dep't of Homeland Sec*, ___U.S. ___, 140 S.Ct 1891,

1907 (2020). In other words, Section 1252(g) does not deprive a district court of jurisdiction over

challenges to matters other than three discrete actions undertaken in the removal process.

The Plaintiff organizations challenge the constitutionality of ICE's "policy choice" to

target outspoken aliens. They do not seek to stop, delay, reverse or otherwise interfere with any

of the three discrete actions described in Section 1252(g), as to any specific alien or any

particular proceeding. None of the authorities upon which ICE relies supports its claim that such

actions are barred by that statute's "limited scope;" every case it cites involved a claim by an

*individual* challenging the motives behind removal proceedings commenced against *him or her*.

Unlike the plaintiffs in those cases, the organizational Plaintiffs here are not aliens

seeking to undo or prevent removal proceedings commenced against them. A narrow reading of

Section 1252(g) does not apply to constitutional challenges brought by one who is not the alien

1  subject to the three discrete decisions articulated in that statute, or one who is not bringing a

2  challenge to such actions on the alien's behalf.

3      ICE's motion to dismiss on this basis is DENIED.

4  **C.  8 U.S.C. §§ 1252(a)(5) and (b)(9) do not apply.**

5      ICE's second basis for dismissal relies on related provisions in the Immigration and

6  Naturalization Act. It argues that Plaintiffs' claims are inextricably intertwined with ICE's

7  decisions to initiate or pursue removal proceedings, and that the sole and exclusive means for

8  seeking review of such decisions is a petition for review, filed in the Court of Appeals:

9      **(5) Exclusive means of review**

10     Notwithstanding any other provision of law … a petition for review filed with an
       appropriate court of appeals in accordance with this section shall be the sole and
11     exclusive means for *judicial review of an order of removal* entered or issued
       under any provision of this chapter[.]

12 8 U.S.C. § 1252(a)(5) (emphasis added). ICE argues that 8 U.S.C. § 1252(b)(9) similarly funnels

13 all challenges to immigration proceedings and removal orders to the Courts of Appeals:

14     **(b) Requirements for review of orders of removal**

15     With respect to review of an order of removal under subsection (a)(1), the
16     following requirements apply:
                                                * * *
17     **(9) Consolidation of questions for judicial review**

18     *Judicial review* of all questions of law and fact, including interpretation and
19     application of constitutional and statutory provisions, *arising from any action
       taken or proceeding brought to remove an alien* from the United States under this
20     subchapter shall be *available only in judicial review of a **final order*** under this
       section. Except as otherwise provided in this section, *no court shall have
21     jurisdiction*, by habeas corpus under section 2241 of Title 28 or any other habeas
       corpus provision, by section 1361 or 1651 of such title, or by any other provision
22     of law (statutory or nonstatutory), *to review such an order or such questions of
       law or fact*.

23 *Id*. (emphasis added).

24

ORDER DENYING DEFENDANTS' MOTION TO
DISMISS - 10

1     ICE accurately points out that *AADC* described this provision as an "unmistakable zipper

2  clause," channeling "all decisions or actions arising from deportation proceedings to the court of

3  appeals in the first instance." *AADC*, 525 U.S. at 483. It argues that the statutory scheme is

4  designed to limit all aliens to "one bite at the apple" regarding challenging an order of removal.

5  [Dkt. # 41 at 11, citing *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012), and *Jennings

6  v. Rodriguez*, 138 S.Ct. 830, 841 (2018) (Section 1252(b)(9) bars jurisdiction over decisions to

7  detain in the first place, or to seek removal)].

8     ICE also correctly acknowledges that the Ninth Circuit distinguishes between

9  impermissible indirect challenges to removal decisions and orders, and permissible independent

10  claims. Like the Second Circuit, the Ninth Circuit holds that distinction turns on the "substance

11  of the relief the plaintiff seeks." *Martinez*, 704 F.3d at 622 (quoting *Singh v. Gonzalez*, 499 F.3d

12  969, 978 (9th Cir. 2007), and *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011)). *Martinez*

13  explained that "when a claim . . . however it is framed, challenges the procedure and substance

14  of an agency determination that is inextricably linked to the order of removal, it is prohibited."

15     Plaintiffs acknowledge these authorities, but argue they plainly do not apply where, as

16  here, the plaintiffs are *not* seeking judicial review of a removal order. [Dkt. # 56 at 9 (citing

17  *Singh,* 499 F.3d at 978 (§§ 1252(a)(5) and 1252(b)(9) apply *only* to those claims seeking judicial

18  *review of orders of removal*.") (emphasis added))]. Thus, the Ninth Circuit held that Singh's

19  habeas claim for ineffective assistance of counsel during his removal proceeding was not barred

20  by Section 1252(a)(5) or 1252(b)(9), even where his "ultimate goal" was to overturn a removal

21  order that became final because his attorney failed to appeal. *Singh*, 499 F.3d at 979-980.

22     Plaintiffs argue that the Supreme Court's plurality in *Jennings* recently confirmed that

23  Section 1252(b)(9)'s application is limited to claims requiring review of removal orders. The

24

ORDER DENYING DEFENDANTS' MOTION TO
DISMISS - 11

1    plaintiff aliens there challenged their indefinite detention pending their removal proceedings. The

2    Court acknowledged that the claims and the challenged actions "arose from actions taken to

3    remove" the plaintiffs, in the sense that if they had not been taken, the aliens would not be in

4    custody at all. *Jennings,* 138 S.Ct. at 840. But it held that such an expansive reading of "arising

5    from" would lead to "staggering results." It rejected the government's position that Section

6    1252(b)(9) barred any claim that could be traced to the commencement of removal proceedings,

7    or to decisions made in those proceedings: "cramming judicial review of [factual and legal

8    questions surrounding such claims] into the review of final removal orders would be absurd." *Id.*

9         *Jennings* also rejected the government's "extreme" interpretation of Section 1252(b)(9)

10   because it would mean that, absent the entry of a final removal order, the aliens' indefinite

11   detention claim was effectively unreviewable:

12        By the time a final order of removal was eventually entered, the allegedly
         excessive detention would have already taken place. And of course, it is possible
13        that no such order would ever be entered in a particular case, depriving that
         detainee of any meaningful chance for judicial review.

14   *Id.* at 840. The statue is properly read to preclude a "second bite at the apple." *Martinez,*

15   704 F.3d at 622. It should not be interpreted to deprive a plaintiff of his first bite.

16        ICE's reliance[3] on *Jennings* is misplaced. As Plaintiffs point out, courts in the Ninth

17   Circuit have since recognized that *Jennings* departs from prior Ninth Circuit precedent, because

18   it rejects the "expansive interpretation of 'arising from' that would sweep a claim into Section

19   1252(b)(9) simply because an alien is in removal proceedings." [Dkt. # 56 at 10 (citing *Cancino-*

20   *Castellar v. Nielsen*, 338 F. Supp. 3d 1107, 1116 (S.D. Cal. 2018)].

21

22

23   ───────────────────
     [3] ICE cites numerous other authorities, which are inapplicable for the reasons described in

24   Plaintiffs' opposition. [Dkt. # 56 at p. 12, n. 9].

ORDER DENYING DEFENDANTS' MOTION TO
DISMISS - 12

Furthermore, and in any event, *Regents* recently confirmed that Section 1252(b)(9) does not bar claims (like the challenge to DACA's rescission there) that do not challenge removal proceedings:

> Section 1252(b)(9) bars review of claims arising from "action[s]" or "proceeding[s] brought to remove an alien." ... That targeted language is not aimed at this sort of case. As we have said before, § 1252(b)(9) "does not present a jurisdictional bar" where those bringing suit "are not asking for review of an order of removal," "the decision … to seek removal," or "the process by which … removability will be determined." And it is certainly not a bar where, as here, the parties are not challenging any removal proceedings.

*Regents*, 140 S.Ct. at 1907 (internal citation to *Jennings* omitted).

Plaintiffs seek a Declaration that ICE's selective enforcement policy is unconstitutional and violates the APA. And they seek to enjoin that policy. They do not seek review of any removal order and are not challenging any part of the process by which their removability will be determined. They do not seek to enjoin any specific removal proceeding, even if the injunction might ultimately have an impact on some removals. The substance of the relief they seek demonstrates that their claims are independent of challenges to removal orders. *See Martinez*, 704 F.3d at 622.

8 U.S.C. §§ 1252(a)(5) and 1252(b)(9) do not deprive this Court of jurisdiction over Plaintiffs' claims and ICE's motion to dismiss on that basis is DENIED.

**D.  Plaintiffs have established organizational standing.**

The Court rejected above ICE's argument the Plaintiffs' claims were so inextricably intertwined with individual removal proceedings that they were jurisdictionally barred as judicial challenges to those proceedings. ICE's third basis for dismissal takes a different tack. It claims that the Plaintiff organizations are so far removed from the policy and practice of which they complain that they do not have standing to assert claims based on those policies and practices: "where, as here, 'the plaintiff is not himself the object of the government action or inaction he

1    challenges, standing is not precluded, but it is ordinarily substantially more difficult to

2    establish.'" [Dkt. # 41 at 16 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992)).]

3         "A complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) if the action . . . is not a

4    case or controversy within the meaning of the Constitution"—i.e., if the plaintiff lacks standing

5    to assert a claim. *United Transp. Union v. Burlington N. Santa Fe R. Co.*, No. C06-5441 RBL,

6    2007 WL 26761, at *2 (W.D. Wash. Jan. 2, 2007), *aff'd*, 528 F.3d 674 (9th Cir. 2008). As with

7    other motions based on subject matter jurisdiction, the plaintiff has the burden of demonstrating

8    that standing exists. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir.

9    1989). Defendants can assert either a "facial attack" against standing, which is limited to the

10    complaint's allegations, or a "factual attack," which allows the court to consider evidence

11    outside the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

12         A plaintiff has standing to sue only if they present a legitimate "case or controversy,"

13    meaning the issues are "definite and concrete, not hypothetical or abstract." *Thomas v.*

14    *Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). To establish Article III

15    standing, they must show they (1) suffered an injury in fact that is (2) fairly traceable to the

16    alleged conduct of the defendants, and that is (3) likely to be redressed by a favorable decision.

17    *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A plaintiff who faces a threat of

18    future injury "has standing to sue if the threatened injury is certainly impending, or there is a

19    substantial risk" that the injury will occur. *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir.

20    2018) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

21         An organization "may have standing in its own right to seek judicial relief from injury to

22    itself and to vindicate whatever rights and immunities the association itself may enjoy."

23    *American Federation of Government Employees Local 1 v. Stone*, 502 F.3d 1027, 1030 (9th Cir.

24

2007) ("*AFGE*") (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)). As with individuals, organizational standing "consists of three elements: (1) injury in fact; (2) causation; and (3) redressability." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (internal quotations and citations omitted).

The parties agree that an organization may establish the required injury in fact if it can demonstrate (1) frustration of its organizational mission and (2) diversion of its resources to combat the particular injurious behavior in question. *Rodriguez v. City of San Jose*, 930 F.3d 1124, 1134 (9th Cir. 2019).

Plaintiff La Resistencia claims that ICE's selective enforcement policy has had a chilling effect on its members: they are reluctant to attend, participate, and speak, or have resorted to doing so anonymously. It claims the policy has frustrated its ability to communicate its message, and made families of detainees reluctant to talk to its members. La Resistencia claims its mission depends on undocumented persons speaking out, and that ICE's policy is having its intended effect of chilling that speech. It also claims to have been forced to divert time and money and effort to help defend Mora-Villalpando and assist in her immigration proceedings, leading it to cancel a rally and a march. [Dkt. # 13].

Plaintiff CARW claims that ICE's policy similarly frustrates its mission. CARW claims it works closely with and in support of La Resistencia and its agenda, participating in "solidarity days" at the Northwest Detention Center, training, and the like. It claims it too diverted resources to assist Mora-Villalpando in her immigration proceedings, causing it to miss other events. It claims that ICE's targeting of activist leaders frustrates its own mission, which is set by leaders like Mora-Villalpando. The Plaintiff organizations argue that while they are not themselves the

1   individuals targeted by ICE's policy, they credibly allege that stifling the organizations' speech

2   (and that of their members) was a goal of that policy.

3          ICE argues that the Plaintiff organizations cannot establish the required injury in fact. It

4   argues that an organization cannot "manufacture" an injury by "incurring litigation costs or

5   simply choosing to spend money fixing a problem that otherwise would not affect the

6   organization at all." [Dkt. # 41 at 20 (citing *La Asociacion de Trabajadores de Lake Forest,* 624

7   F.3d at 1088)]. It repeats its inaccurate claim that Plaintiffs' FAC specifically challenges and

8   seeks to enjoin pending removal proceedings against Mora-Villalpando, Plaintiff La

9   Resistencia's President. [Dkt. # 41 at 21]. ICE cites the FAC's Prayer for Relief, but that section

10  of the FAC makes no such request. [Dkt. # 13 at 21]. Instead, as discussed above, Plaintiffs seek

11  a declaration that ICE's selective enforcement policy is unconstitutional, and an injunction

12  restraining it from continuing to employ that policy. *Id.*

13         ICE argues that Plaintiffs cannot demonstrate that the diversion of resources to defend

14  Mora-Villalpando frustrates their purpose, given that preventing Mora-Villalpando's deportation

15  "appears entirely consistent with their stated mission." [Dkt. # 41 at p. 22]. ICE argues that

16  because the Plaintiff organizations were formed to fight deportations, spending resources

17  resisting Mora-Villalpando's deportation is not a diversion of those resources sufficient to

18  convey standing to complain about the validity of the policy leading to such removal

19  proceedings.

20         Plaintiffs emphasize first that they are not required to demonstrate any minimal threshold

21  as to the magnitude of their injuries in fact. Indeed, "[p]laintiffs who suffer concrete, redressable

22  harms that amount to pennies are still entitled to relief." *E. Bay Sanctuary Covenant v. Trump,*

23  950 F.3d 1242, 1267 (9th Cir. 2020).

24

ORDER DENYING DEFENDANTS' MOTION TO
DISMISS - 16

1    They argue that the facts of this case are analogous to those in *The Presbyterian Church*

2    *(U.S.A.) v. United States*, 870 F.2d 518 (9th Cir. 1989), and they are. There, INS authorities

3    infiltrated and surveilled church services to investigate a "loosely knit group of clergy and lay

4    people aiding Central American refugees." The church sued, asserting First and Fourth

5    Amendment claims. It alleged INS's conduct frustrated its purpose in several ways: members

6    withdrew, a Bible study group was cancelled for lack of participation, clergy time was diverted

7    from normal functions, general support for the church declined, and members became reluctant

8    to seek pastoral counsel. *Id*. at 521-22. INS argued that the Church did not have standing based

9    on only a "subjective" chilling effect.

10   The Ninth Circuit disagreed, holding that the claim that surveillance chilled individual

11   congregants' participation in the church and in turn interfered with the church's ability to carry

12   out its mission stated a "distinct and palpable" injury. *Id*. at 522. *See also Valle del Sol, Inc. v.*

13   *Whiting*, 732 F.3d 1006 (9th Cir. 2013) (organization transporting undocumented immigrants had

14   standing to challenge new law making such transportation a crime, based on "reasonable fears"

15   its staff would be investigated or prosecuted); and *AFGE*, 502 F.3d  at 1032 (union had standing

16   to challenge member's discharge for posting and discussing union materials; it alleged the

17   conduct had a chilling effect on membership and communication).

18   Plaintiffs also rely on *Smith v. Pacific Properties*, 358 F.3d 1097 (9th Cir. 2004). The

19   organizational plaintiff there was formed to eliminate housing discrimination against disabled

20   individuals, by ensuring compliance with the Fair Housing Amendments Act. It sued a housing

21   developer, claiming it was violating the FHAA. The Ninth Circuit reversed the District Court's

22   order dismissing the organization's claims for lack of standing, reasoning that "any violation of

23   the FHAA would constitute a frustration of the plaintiff's mission." *Id*. at 1105. As Plaintiffs

24

ORDER DENYING DEFENDANTS' MOTION TO
DISMISS - 17

argue, the Ninth Circuit has not held that an organization formed to fight for a given cause fails to establish the requisite injury when it uses it resources on that cause. In *Pacific Properties*, it held the opposite.

ICE's Reply does not address *Presbyterian Church (U.S.A.)*, or the other authorities upon which Plaintiffs rely. Instead, it argues that Plaintiffs are incurring costs in response to a "speculative" threat, which is not enough to convey standing. The Plaintiffs' claimed injuries, however, are not speculative, and they are enough to satisfy the injury in fact requirement for standing.

ICE also argues that the Plaintiffs cannot establish third party standing under the "prudential third-party doctrine," which provides that a party generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties. The doctrine "assumes that the party with the right has the appropriate incentive to challenge (or not challenge) governmental action and to do so with the necessary zeal and appropriate presentation[.]" [Dkt. # 41 at 22 (citing *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004)]. ICE concedes that third party standing "may be appropriate" where (1) the party asserting the right has a close relationship with the person who possess the right, and (2) there is a "hindrance to the possessor's ability to protect his own interests." [Dkt. # 41 at 22 (citing *Kowalski*, 543 U.S. at 130)].

As ICE points out, Plaintiffs' Response does not address this argument, but the Court concludes that the Plaintiffs have standing under this standard, as well. First, the Plaintiffs have the requisite close relationship with the unlawfully present aliens that form their membership and the purpose of their organizations. Indeed, ICE argued above that their interests were sufficiently aligned to preclude jurisdiction.

1    Second, ICE's claim that the individual aliens can adequately raise these same

2    constitutional claims themselves is demonstrably inaccurate. ICE argues that Mr. Ragbir, for

3    example, is asserting his constitutional rights in the habeas proceeding the Second Circuit's

4    Opinion invited. As discussed above, the Supreme Court recently vacated that opinion. *Pham v.*

5    *Ragbir*, 2020 WL 5882107 (October 5, 2020).

6    Even before the Supreme Court's order, however, it was clear that individual aliens are

7    "hindered" in their ability to protect the constitutional interests Plaintiffs seek to vindicate here.

8    The bulk of ICE's motion relies on authorities holding that individual aliens have *no*

9    ability to assert in District Court constitutional claims arising from their removal proceedings. In

10   *AADC*, Justice Scalia undercut almost entirely ICE's conclusory claim that because the aliens the

11   Plaintiffs were formed to assist have the right and the incentive (and the ability) to challenge the

12   allegedly unconstitutional selective enforcement policy, the Plaintiff organizations do not have

13   standing to do so:

14          As a general matter—and assuredly in the context of claims such as those put
            forward in the present case—*an alien unlawfully in this country has no*
15          *constitutional right to assert selective enforcement as a defense against his*
            *deportation.*
16
17   *AADC*, 525 U.S. at 488 (emphasis added). If it is true that an alien unlawfully in the United

18   States has no constitutional right to assert selective enforcement as a defense against deportation,

19   the Plaintiffs have amply demonstrated that the aliens subject to ICE's allegedly unconstitutional

20   selective enforcement policy are hindered in their own ability to challenge that policy.

21   ICE also argues that Plaintiffs have failed to show that how the relief they seek would

22   address any broader harm they work to combat. It argues that the diversion of resources to Mora-

23   Villalpando's deportation proceedings, which has already occurred, would not be redressed by

24   the prospective injunction they seek. It argues that "past exposure to illegal conduct does not in

itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." [Dkt. # 41 at 23 (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974))].

In *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), a plaintiff seeking to enjoin police chokeholds had no standing to do so because he could not show he would be arrested or subjected to a chokehold in the future. ICE relies on *Lyons* to claim that Plaintiffs have not sufficiently shown they will divert resources to assist other individuals in the future, and that they cannot therefore demonstrate that their injuries are redressable by the injunction they seek.

Plaintiffs argue they need only show "that a favorable decision will relieve their injuries." [Dkt. # 56 at 19 (citing *Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1102 (9th Cir. 2017) (quoting *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982)))]. They argue that a credible threat of recurrent injury, or continuing, present adverse effects stemming from the defendant's actions conveys standing to seek prospective injunctive relief. [Dkt. # 56 at 19 (citing *LaDuke v. Nelson*, 762 F.2d 1318, 1323-24 (9th Cir. 1985), *amended,* 796 F.2d 309 (9th Cir. 1986) ("The Supreme Court has repeatedly upheld the appropriateness of federal injunctive relief to combat a pattern of illicit law enforcement behavior."))].

Plaintiffs argue they have demonstrated that their members fear retaliation for speaking out, fears supported by ICE's pattern of targeting such individuals for surveillance and removal proceedings. The court agrees. Unlike the plaintiff in *Lyons*, Plaintiffs here do allege a pattern of ongoing selective enforcement. "[W]here the defendants have repeatedly engaged in the injurious acts in the past, there is a sufficient possibility that they will engage in them in the near future" to show standing. [Dkt. # 56 at 21 (citing *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001))].

1    ICE's entire argument is based on the flawed characterization that the Plaintiffs seek to

2    enjoin removal proceedings against the eleven individuals described in their FAC, rather than to

3    enjoin what they claim is an unconstitutional policy. Properly construed, the FAC establishes

4    that the Plaintiffs have suffered injury in fact, caused by a policy that would be redressed by the

5    injunction they seek. They have established Article III standing to assert their claims. ICE's

6    Motion to Dismiss on this basis is DENIED.

7                                    **III.     CONCLUSION**

8        For the foregoing reasons, Defendants' Motion to Dismiss for lack of subject matter

9    jurisdiction [Dkt. # 41] is DENIED.

10

11       IT IS SO ORDERED.

12       DATED this 8th day of October, 2020.

13

14

15                                         _____
                                           JAMES L. ROBART
16                                         United States District Judge

17

18

19

20

21

22

23

24

ORDER DENYING DEFENDANTS' MOTION TO
DISMISS - 21