1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    NWDC RESISTANCE, et al.,                    CASE NO. C18-5860JLR

11                          Plaintiffs,           ORDER DENYING MOTION TO
                                                  DISMISS AND MOTION TO
               v.                                 STAY
12

13    IMMIGRATION & CUSTOMS
      ENFORCEMENT, et al.,
14
                           Defendants.
15

16                              I.      INTRODUCTION

17          Before the court are two motions filed by Defendants Immigration & Customs

18    Enforcement ("ICE"), Tae D. Johnson, and Alejandro Mayorkas (collectively,

      "Defendants"):  (1) a motion to dismiss this matter as moot (MTD (Dkt. # 87); MTD
19

20    Reply (Dkt. # 109)); and (2) a motion to stay discovery pending the court's decision on

21    the motion to dismiss (MTS (Dkt. # 92); MTS Reply (Dkt. # 110); MTS Supp. Mot. (Dkt.

22    # 117); 6/3/22 Order (Dkt. # 118)).  Plaintiffs NWDC Resistance ("La Resistencia") and

Coalition of Anti-Racist Whites ("CARW") (collectively, "Plaintiffs") oppose the motions.  (MTD Resp. (Dkt. # 104); MTS Resp. (Dkt. # 102).)  The court has considered the motions; the parties' submissions in support of and in opposition to the motions; the relevant portions of the record; and the applicable law.  Being fully advised,[1] the court DENIES Defendants' motion to dismiss and DENIES their motion to stay discovery as moot.

## II.    BACKGROUND

The court set forth Plaintiffs' allegations in detail in its October 8, 2020 order denying Defendants' second motion to dismiss.[2]  (10/8/2020 Order (Dkt. # 70) (denying motion to dismiss for lack of subject matter jurisdiction).)  Therefore, the court focuses here on the background relevant to the instant motions to dismiss and to stay.

Plaintiffs filed this lawsuit on October 23, 2018.  (*See* Compl. (Dkt. # 1).)  They allege that ICE has engaged in a "pattern and practice of selectively enforcing immigration laws against outspoken immigrant rights activists who publicly criticize U.S. immigration law, policy, and enforcement" since January 2017.  (Am. Compl. (Dkt. # 13) ¶ 9.)  They further allege that ICE "investigated, surveilled, harassed, raided, arrested, detained, and deported those activists immediately following press appearances and news conferences;" "detained spokespeople and directors of immigration advocacy

---

[1] No party requests oral argument on the motions to dismiss and to stay (*see* MTD at 1; MTD Resp. at 1; MTS at 1; MTS Resp. at 1) and the court concludes that oral argument would not be helpful to its disposition of the motions, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[2] The court also denied Defendants' first motion to dismiss on May 30, 2019.  (5/30/19 Order (Dkt. # 30) (denying motion to dismiss or stay under the first-to-file rule).)

1    organizations;" and "surveilled the organizations' headquarters and targeted their

2    members." (*Id.* ¶ 10.)  Plaintiffs describe several instances of ICE's alleged practice of

3    targeting their members, including La Resistencia leader Maru Mora-Villalpando, for

4    selective enforcement in 2017 and 2018.  (*See id.* ¶¶ 16-52.)  Plaintiffs also allege that, as

5    a result of ICE's actions, their organizations were forced to divert resources to assist the

6    targeted individuals and to limit participation in activist work due to their members' fear

7    of retaliation.  (*Id.* ¶¶ 53-84.)  ICE's actions, according to Plaintiffs, violated then-current

8    Executive Orders and agency policies, "none of which," they assert, "permit using

9    immigration enforcement to retaliate against immigrant rights activists for their protected

10   political speech." (*Id.* ¶ 101.)  Plaintiffs allege claims for violations of the First

11   Amendment (*id.* ¶¶ 85-93), the Due Process Clause of the Fifth Amendment (*id.*

12   ¶¶ 94-96), the Administrative Procedure Act, 5 U.S.C. § 706 (*id.* ¶¶ 97-103); and the

13   Equal Protection Clause (*id.* ¶¶ 104-07).  They seek both a declaration that ICE's alleged

14   policy of retaliatory enforcement based on protected political speech violates the First

15   and Fifth Amendments and a permanent injunction restraining Defendants from

16   selectively enforcing immigration laws based on protected political speech.  (*Id.* at

17   20-21.)  They do not seek monetary damages.  (*See id.*)

18          In April 2021, the court granted Defendants' motion to stay this case for 90 days

19   after the change in the presidential administration in January 2021.  (4/8/21 Order (Dkt.

20   # 75).)  Defendants asked for the stay to allow time for new Department of Justice

21   officials to become familiar with this case; to evaluate whether new immigration

22   enforcement priorities would be issued that could affect this case; and in anticipation of

1  the issuance of new civil immigration enforcement guidelines.  (*Id.* at 3 (citing 1st MTS

2  (Dkt. # 71) at 1-3).)

3        On September 30, 2021, the Department of Homeland Security ("DHS"), through

4  Secretary Alejandro N. Mayorkas, issued new *Guidelines for the Enforcement of Civil*

5  *Immigration Law* (the "New Guidelines"), which went into effect on November 29, 2021.

6  (10/26/21 Stip. Mot. (Dkt. # 77), App'x A ("New Guidelines").)  The New Guidelines

7  emphasize the importance of prosecutorial discretion and prioritize the enforcement of

8  immigration laws where a noncitizen poses a threat to "national security, public safety,

9  and border security."  (*Id.* at 2-3.)  With respect to the protection of "civil rights and civil

10  liberties," the New Guidelines state, in relevant part:

11          We must exercise our discretionary authority in a way that protects civil
        rights and civil liberties.  The integrity of our work and our Department

12          depend on it.  A noncitizen's race, religion, gender, sexual orientation or
        gender identity, national origin, or political associations shall never be

13          factors in deciding to take enforcement action.  A noncitizen's exercise of
        their First Amendment rights also should never be a factor in deciding to take

14          enforcement action.  We must ensure that enforcement actions are not
        discriminatory and do not lead to inequitable outcomes.

15  (*Id.* at 5.)  The New Guidelines require that certain measures be taken "before the

16  effective date" of the guidance, including "extensive training materials and a continuous

17  training program"; a "review process . . . to ensure the rigorous review of . . .

18  enforcement decisions throughout the first ninety (90) days of implementation of" the

19  guidance, along with "longer-term review processes . . . drawing on the lessons learned";

20  a process to collect "detailed, precise, and comprehensive data" about enforcement

21  actions taken; and the establishment of a "fair and equitable review process to afford

22

1    noncitizens and their representatives the opportunity to obtain expeditious review of the

2    enforcement actions taken."  (*Id.* at 5-6.)  Finally, the New Guidelines state that the

3    guidance "is not intended to, does not, and may not be relied upon to create any right or

4    benefit, substantive or procedural, enforceable at law by any party in any administrative,

5    civil, or criminal matter."  (*Id.* at 7.)

6          After the New Guidelines were issued, ICE created a "foundational web-based

7    training that provided instruction to Homeland Security Investigations [("HSI")] Special

8    Agents and ICE Enforcement and Removal Operations [("ERO")] Officers so that they

9    would better understand how to exercise discretion in the course of their official duties."

10   (Mot at 5 (first citing Horton Decl. (Dkt. # 89) ¶¶ 4, 6; and then citing Putnam Decl. (Dkt.

11   # 90) ¶ 4).)  The HSI Agents and ERO Officers were required to complete the training by

12   December 6, 2021.  (Horton Decl. ¶ 6; Putnam Decl. ¶ 4.)  ERO also conducted town hall

13   meetings to discuss the New Guideline with officers and staff; created monthly training

14   scenarios based on cases encountered in the field; and developed training for supervisors.

15   (Putnam Decl. ¶¶ 5-6.)

16         In October 2021 and January 2022, the court granted the parties' stipulated

17   motions to stay this case to allow the parties the opportunity to review the New

18   Guidelines and discuss the possibility of settlement.  (10/26/21 Order (Dkt. # 78); 1/25/22

19   Order (Dkt. # 81).)  On March 21, 2022, the parties informed the court that their attempt

20   to mediate the case was unsuccessful.  (3/21/22 OSC Resp. (Dkt. # 84).)  Accordingly,

21   the court lifted the stay (over Defendants' objection) and set a bench trial on April 24,

22

1   2023.  (3/21/22 Order (Dkt. # 85); Sched. Order (Dkt. # 86).)   The instant motions

2   followed.

### III.   ANALYSIS

4         Defendants contend that Secretary Majorkas's issuance of the New Guidelines

5   mooted this case and thus mandates its dismissal.  Below, the court sets forth the legal

6   standards that govern the court's consideration of whether this case is moot, and then

7   applies those standards to Defendants' motion to dismiss.

8   **A.   Legal Standards**

9         A party may move to dismiss an action for lack of subject matter jurisdiction.

10  Fed. R. Civ. P. 12(b)(1).  A federal court does not have jurisdiction "to give opinions

11  upon moot questions or abstract propositions, or to declare principles or rules of law

12  which cannot affect the matter in issue in the case before it."  *Church of Scientology of*

13  *Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653

14  (1895)).  Thus, mootness deprives federal courts of subject matter jurisdiction because

15  federal courts are empowered to hear only cases and controversies.  U.S. Const. art. III

16  § 2; *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974).

17        There  is "no case or controversy, and a suit becomes moot, 'when the issues

18  presented are no longer "live" or the parties lack a legally cognizable interest in the

19  outcome.'"  *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Already, LLC v. Nike,*

20  *Inc.*, 568 U.S. 85, 91 (2013)).  When determining whether a case is moot, "the question is

21  not whether the precise relief sought at the time the application for an injunction was

22  filed is still available.  The question is whether there can be *any* effective relief."  *NW*

1   *Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244-45 (9th Cir. 1988) (quoting *Garcia v.*

2   *Lawn*, 805 F.2d 1400, 1403 (9th Cir. 1986)).  A case becomes moot "only when it is

3   impossible for a court to grant any effectual relief whatever to the prevailing party."

4   *Chafin*, 568 U.S. at 172 (citation omitted).  The party alleging mootness bears a "heavy"

5   burden to establish that the court can provide no effective relief.  *See Karuk Tribe of Cal.*

6   *v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (quoting *Forest Guardians v.*

7   *Johanns*, 450 F.3d 455, 461 (9th Cir. 2006)).

8         A defendant's "voluntary cessation of challenged conduct does not necessarily

9   render a case moot because, if the case were dismissed as moot, the defendant would be

10  free to resume the conduct." *Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*,

11  941 F.3d 1195, 1198 (9th Cir. 2019) (first citing *Friends of the Earth, Inc. v. Laidlaw*

12  *Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000); and then citing *United States v. W.*

13  *T. Grant Co.*, 345 U.S. 629, 632-33 (1953)).  Voluntary cessation can, however, moot a

14  case "'if subsequent events made it absolutely clear that the allegedly wrongful behavior

15  could not reasonably be expected to recur.'" *Rosebrock v. Mathis*, 745 F.3d 963, 971

16  (9th Cir. 2014) (quoting *Friends of the Earth*, 528 U.S. at 189).

17        Where, as here, a government entity argues that a voluntary policy change that is

18  not reflected in a statute or regulation moots an action, it must be "'absolutely clear' to

19  the court, considering the 'procedural safeguards' insulating the new state of affairs from

20  arbitrary reversal and the government's rationale for its changed practice(s), that the

21  activity complained of will not reoccur." *Fikre v. Fed. Bureau of Investigation*, 904 F.3d

22  1033, 1039 (9th Cir. 2018) (citing *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir.

2015)).  A government agency can meet this burden by "persuading the court that the change in its behavior is 'entrenched' or 'permanent'."  *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1153 (9th Cir. 2019) (quoting *Fikre*, 904 F.3d at 1037 (quotation marks omitted)).  Courts in the Ninth Circuit apply a "'loose framework' of non-exhaustive considerations" when evaluating whether such a policy change moots an action.  *Id.* at 1153 (citing *Rosebrock*, 745 F.3d at 972).  These considerations include: (1) whether "the policy change is evidenced by language that is 'broad in scope and unequivocal in tone'"; (2) whether the new policy "addresses all of the objectionable measures that [agency] officials took against the plaintiffs" under the old policy; (3) whether the case at issue "was the catalyst for the agency's adoption of the new policy"; (4) whether "the policy has been in place for a long time"; and (5) whether, "since the [new policy's] implementation[,] the agency's officials have not engaged in conduct similar to that challenged by the plaintiff."  *Rosebrock*, 745 F.3d at 972 (citing *White v. Lee*, 227 F.3d 1214, 1243-44 (9th Cir. 2000)).  Courts, however, are "less inclined to find mootness where the 'new policy . . . could be easily abandoned or altered in the future.'"  *Id.* (quoting *Bell v. City of Boise*, 709 F.3d 890, 901 (9th Cir. 2013)).  "Ultimately, the question remains whether the party asserting mootness 'has met its heavy burden of proving that the challenged conduct cannot reasonably be expected to recur.'"  *Id.* (quoting *White*, 237 F.3d at 1244).

//

//

//

1

**B.      Defendants' Motion to Dismiss**

2

Defendants move to dismiss Plaintiffs' amended complaint under Federal Rule of

3

Civil Procedure 12(b)(1).  (*See generally* MTD.)  They argue that because the New

4

Guidelines "expressly prohibited employees from using a noncitizen's exercise of their

5

First Amendment rights as a factor in deciding to take civil immigration enforcement

6

action," the constitutional violations at issue in the amended complaint cannot reasonably

7

be expected to recur.  (*Id.* at 10.)  As a result, according to Defendants, the court cannot

8

grant Plaintiffs any effective relief—either because there is "nothing left to enjoin" or

9

because there is no "substantial controversy. . . of sufficient immediacy and reality to

10

warrant the issuance of a declaratory judgment"—and the case is moot.  (*Id.* at 10-11

11

(first quoting *California v. Douglas*, 757 F.3d 975, 982 (9th Cir. 2014); and then quoting

12

*Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005)).)  Plaintiffs

13

disagree.  (*See generally* MTD Resp.)  They contend that the New Guidelines do not

14

constitute a policy change at all, but rather represent an "easily altered" policy that

15

simply reiterates prohibitions on the use of protected speech as a factor in immigration

16

enforcement actions that were present in policies that predated the New Guidelines.  (*See*

17

*id.* at 8-13.)  They also argue that Defendants cannot meet their heavy burden to

18

demonstrate that it is absolutely clear that further violations of Plaintiffs' members' First

19

Amendment rights could not reasonably be expected to recur.  (*See id.* at 1, 13-18.)

20

Because both parties direct the court to the *Rosebrock* factors for evaluating

21

whether an internal policy change moots an action, the court considers the parties'

22

1   arguments in the context of its consideration of those factors.  The court concludes that

2   Defendants have not met their burden to establish that this action is moot.

3        As an initial matter, the court agrees with Plaintiffs that it is questionable whether

4   the New Guidelines set a new policy governing the use of noncitizens' protected speech

5   in making immigration enforcement decisions.  As Plaintiffs point out, DHS issued

6   guidance in May 2019 stating that the agency "does not profile, target, or discriminate

7   against any individual for exercising his or her First Amendment rights."  (*See* MTD

8   Resp. at 4 (quoting *Information Regarding First Amendment Protected Activities*, Dep't

9   Homeland Sec. (May 17, 2019),

10  https://www.dhs.gov/sites/default/files/publications/info_regarding_first_amendment_pro

11  tected_activities_as1_signed_05.17.2019.pdf (memo from Acting DHS Secretary Kevin

12  McAleenen to all DHS employees).)  Thus, according to Plaintiffs, the New Guidelines—

13  which mention the First Amendment in only one sentence—simply reiterate the agency's

14  already-existing publicly stated position.  (*Id.*)  In addition, Plaintiffs allege that ICE has

15  engaged in a pattern or practice of retaliation *despite* the existence of earlier Executive

16  Orders and agency policies which, on their face, did not permit retaliation against

17  noncitizens for their protected speech.  (*See* MTD Resp. at 10-11; *see* Am. Compl.

18  ¶ 101).)  Defendants do not address Plaintiffs' comparison of the New Guidelines to

19  earlier agency guidance in their reply.  (*See generally* MTD Reply.)

20       Assuming, however, that the New Guidelines represent a change in agency policy

21  regarding the consideration of protected speech in immigration enforcement decisions,

22

1   the court concludes that the *Rosebrock* factors counsel against a finding that this case is

2   moot.

3          First, the court concludes that the policy change is not "evidenced by language that

4   is broad in scope and unequivocal in tone." *Rosebrock*, 745 F.3d at 972.  The New

5   Guidelines's sole reference to First Amendment rights is a sentence within a paragraph

6   that states that "a noncitizen's race, religion, gender, sexual orientation or gender identity,

7   national origin, or political factors *shall* never be factors in deciding to take enforcement

8   action" and that a "noncitizen's exercise of First Amendment rights *should* also never be

9   a factor" in such a decision.  (New Guidelines at 5 (emphasis added).)  Nothing in the

10  New Guidelines explains the reasons for the adoption of the purported new First

11  Amendment policy or acknowledges the existence of a prior unlawful policy.  *See Am.*

12  *Diabetes Ass'n*, 938 F.3d at 1153 (finding language "broad and unequivocal" where the

13  new policy "unequivocally renounce[d] the previously challenged" policy).  Furthermore,

14  the New Guidelines emphasize that enforcement decisions remain fully within the

15  discretion of ICE officers and agents and that the New Guidelines are "not intended to,

16  do[] not, and may not be relied upon to create any right or benefit, substantive or

17  procedural, enforceable at law by any party in any administrative, civil, or criminal

18  matter."  (New Guidelines at 7.)  Although Defendants point to the programs they

19  developed to train HSI and ERO agents and officers as evidence that their new policy is

20  "broad and unequivocal" (*see* MTD at 13-14), the declarations and press releases they

21  cite do not specifically address training about the protection of First Amendment rights

22  (*see id.*; *see generally* Horton Decl.; Putnam Decl.; MTD Reply at 3-4 (quoting DHS

1    press releases[3]).)  The court concludes, therefore, that the first *Rosebrock* factor weighs

2    against mootness.

3         Second, the New Guidelines do not mention, much less "address[] all of the

4    objectionable measures that agency officials took against" Plaintiffs' members and

5    associates under its prior policies.  *See Rosebrock*, 745 F.3d at 972; *see also Am.*

6    *Diabetes Ass'n*, 938 F.3d at 1153 (finding the second *Rosebrock* factor met where the

7    challenged prohibition on providing diabetes-related care had been repealed).  Thus, the

8    second *Rosebrock* factor also weighs against a finding of mootness.

9         Third, Defendants concede that this case was not "the catalyst for the agency's

10   adoption of the new policy" and that, therefore, the third *Rosebrock* factor weighs against

11   finding this case is moot.  (*See* MTD at 14 (citing *Rosebrock*, 745 F.3d at 972).)

12        Fourth, there can be no dispute that the New Guidelines have not "been in place

13   for a long time."  *See Rosebrock*, 745 F.3d at 972.  Rather, they went into effect on

14   November 29, 2021—just over six months ago.  (New Guidelines at 1.)  In contrast,

15   courts finding that the fourth factor weighs in favor of mootness have observed that the

16   policy was in effect in for a period of years.  *See, e.g., Am. Diabetes Ass'n*, 938 F.3d at

17   1153 (finding fourth factor met when the policy had been in place for over two years);

18   *Rosebrock*, 745 F.3d at 974 (noting the policy change was announced over three years

19   earlier).  Defendants assert that First Amendment free speech rights, in general, are

20

21        _____

         [3] The court grants Defendants' request to take judicial notice of DHS's press releases as

22   documents available on a government agency website.  (*See* MTD Reply at 3 n.2); *Gustavson v.*
     *Wrigley Sales Co.*, No. 12-CV-01861-LHK, 2014 WL 60197, at *3 n.2 (N.D. Cal. Jan. 7, 2014).

1   "entrenched" and that there is "no indication that any Secretary would ever rescind the

2   prohibition on initiating enforcement action based on the exercise of free speech." (MTD

3   at 14-15.) But again, Plaintiffs allege that ICE has a pattern and practice of retaliatory

4   enforcement *despite* the agency's publicly-stated policies. Thus, the court concludes that

5   the fourth factor weighs against finding this case moot.

6         Finally, Defendants have not shown that ICE officials have not engaged in

7   conduct similar to that challenged by Plaintiffs since the New Guidelines were

8   implemented. *See Rosebrock*, 745 F.3d at 972. Defendants assert that Plaintiffs have no

9   evidence that ICE officials have selectively targeted their members based on their

10  protected speech since the 2017 and 2018 actions described in the amended complaint,

11  much less since the new presidential administration began in January 2021 or since the

12  New Guidelines were issued in September 2021. (MTD at 16.) As Plaintiffs point out,

13  however, it is *Defendants'* burden—not theirs—to show that ICE's retaliatory conduct

14  will not recur. (MTD Resp. at 17-18); *Rosebrock*, 745 F.3d at 972; *see also Fikre*, 904

15  F.3d at 1039 n.4 (noting that "the focus should not be on the absence of evidence" that

16  the challenged conduct has continued because "that would improperly shift the

17  evidentiary burden to [the plaintiff] to prove that the alleged violation will not reoccur").

18  Indeed, although (as Defendants repeatedly point out) courts presume that a government

19  entity is acting in good faith when it changes its policies, Defendants nevertheless bear

20  the "heavy burden of showing that the challenged conduct cannot reasonably be expected

21  to start up again." *Rosebrock*, 745 F.3d at 971. Accordingly, the court concludes that the

22  final *Rosebrock* factor, too, weighs against finding mootness.

1    Because all of the *Rosebrock* factors weigh against a finding that this case is moot,

2    the court DENIES Defendants' motion to dismiss.  Further, because the court has decided

3    the instant motion, it DENIES Defendants' motion to stay discovery pending the

4    resolution of this motion to dismiss as moot.

5                          IV.    CONCLUSION

6    For the foregoing reasons, the court (1) DENIES Defendants' motion to dismiss

7    (Dkt. # 87) and (2) DENIES Defendants' motions to stay discovery pending the court's

8    resolution of the motion to dismiss (Dkt. # 92).

9    Dated this 9th day of June, 2022.

10

11

12                                              JAMES L. ROBART
                                                United States District Judge

13

14

15

16

17

18

19

20

21

22

ORDER - 14