The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NWDC RESISTANCE and COALITION OF ANTI-RACIST WHITES, | No. 3:18-cv-05860-JLR |
| Plaintiffs, | |
| v. | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| IMMIGRATION & CUSTOMS ENFORCEMENT, et al., | |
| Defendants. | |

## I.    INTRODUCTION

After five years of litigation, Plaintiffs, the Coalition of Anti-Racist Whites ("Anti-Racist Whites") and NWDC Resistance ("La Resistencia"),[1] fail to show that they are entitled to the extraordinary remedy of a nationwide injunction requiring broad judicial oversight by this Court of civil immigration enforcement decisions.  For one, the Supreme Court's recent decision in *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057 (2022), bars Plaintiffs' demand for a permanent, nationwide injunction that would restrain the federal government's immigration enforcement operations.

---

[1] Defendants understand that NWDC Resistance changed its name to La Resistencia.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[3:18-cv-05860-JLR] - 1

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1    Beyond this issue, the core question is whether Anti-Racist Whites and La Resistencia have

2    identified sufficient evidence to raise a question of material fact for each required element of the

3    four causes of actions pled in their Amended Complaint, Dkt. 13.  Plaintiffs' claims hinge on an

4    alleged ongoing nationwide pattern and practice of selective enforcement of civil immigration law

5    based on speech.  While Plaintiffs previously survived pleading motion challenges, they can no

6    longer rest on their pleadings and bare allegations.  Now they must come forward with competent

7    evidence from which a rational factfinder could find that all the elements of their four claims are

8    satisfied.

9    Extensive 30(b)(6) testimony reveals that they cannot make this showing.  While Plaintiffs

10   previously overcame motions to dismiss based on their representations about "unidentified

11   members" of their organizations on which this Court relied, Plaintiffs have withdrew these

12   allegations.  For the remaining allegations about an alleged ongoing nationwide pattern and

13   practice of selective enforcement of civil immigration law based on speech, discovery reveals that

14   the allegations are largely based on uncorroborated news reports, speculation, and email blasts

15   from interest groups.  Plaintiffs also appear to argue that other litigation to which they are not

16   parties entitle them to their own unique remedy, a nationwide injunction, in this case.

17   None of this is enough to avoid summary judgment.  Speculation is insufficient and even

18   isolated incidents, if substantiated, do not amount to a pattern and practice or mandate a nationwide

19   injunction.  It is the burden of Anti-Racist Whites and La Resistencia to present competent

20   evidence sufficient to raise a question of material fact for each cause of action and to show that

21   their requested remedy is warranted under the law.  Because they cannot meet their burden,

22   summary judgment is warranted for Defendants on all claims.

23

24

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

## II.    BACKGROUND

Much has changed during the five years since this litigation was first initiated in October 2018, and since Plaintiffs filed the operative Amended Complaint in December 2018.  Dkts. 1, 13. Anti-Racist Whites and La Resistencia (then NWDC Resistance) brought this litigation following changes they claim occurred when a new presidential administration took office in 2017.   They alleged that "[s]ince January 2017, ICE has engaged in a pattern and practice of selectively enforcing immigration laws against outspoken immigrant rights activists who publicly criticize U.S. immigration law, policy, and enforcement." Dkt. 13 ¶9.  Plaintiffs claimed they were harmed and brought claims for: (1) violation of the First Amendment; (2) violation of the Due Process Clause of the Fifth Amendment; (3) violation of the Administrative Procedure Act; and (4) violation of the Equal Protection Clause.  *Id*. ¶¶85-107.

Anti-Racist Whites is an organization with a mission to "undo institutional racism and white privilege through education and organizing in white communities and active support of anti-racist, people of color-led organizations."  Dkt. 13 ¶69.  La Resistencia is an organization "aimed at dismantling an immigration system that profits from the separation of families and exploitation of undocumented communities."  *Id*. ¶54.  Its organizational "mission is to end all detentions and deportations in [Washington] and to shut down the Northwest Detention Center," and advocates that Immigration and Customs Enforcement ("ICE") be abolished.  La Resistencia Tr., 25:8-10; 26:4-5.

Plaintiffs based their claims on alleged organizational injuries, but their claims relied on allegations about unidentified members.  For instance, in support of their First Amendment claim, Plaintiffs alleged "Defendants'[sic] have targeted members of NWDC Resistance who exercise their First Amendment right to speak about or organize against United States immigration policies," and "These practices have silenced undocumented members of NWDC Resistance and

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[3:18-cv-05860-JLR] - 3

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

resulted in decreased group membership." Dkt. 13 ¶¶88-89.  Plaintiffs supported their Equal Protection claim by alleging, "[o]n information and belief, ICE's policy of selectively enforcing immigration laws against outspoken immigrant rights activists disproportionately impacts Latinos," and "violates the rights of Plaintiffs, [and] their members … because the policy is motivated by discriminatory animus against Latinos, as evidenced by the [former] President's many pre-presidential and post-presidential statements. *Id*. ¶¶106-07.

Plaintiffs identified about a dozen individuals they claimed were targeted during 2017-2018 and who made up the alleged pattern and practice:  Daniela Vargas, Migrant Justice members, Baltazar "Rosas" Aburto Gutierrez, Ravi Ragbir, Jean Montrevil, Eliseo Jurado, Amer Othman Adi, Alejandra Pablos, Sergio Salazar, Emilio Gutierrez-Soto, and Maru Mora-Villalpando. Dkt. 13 ¶¶16-52.  Only Mora-Villalpando, the leader of La Resistencia is alleged to be a member of either Plaintiff organization.  No allegedly targeted individuals are members of Anti-Racist Whites.

Around the time litigation was initiated, there were civil immigration enforcement policy changes, but not as Plaintiffs allege.  Prior to 2017, the 2014 Memorandum "Policies for the Apprehension, Detention and Removal of Undocumented Immigrants" was in effect.  Fairchild Decl., Ex. C.  This policy articulated three priorities for the apprehension, detention, and removal of undocumented individuals unlawfully in the United States: (1) "threats to national security, border security, and public safety;" (2)  "misdemeanants and new immigration violators;" and (3) "other immigration violations," including those who were issued a final order of removal.  *Id*. It provided that "resources should be dedicated, to the greatest degree possible, to the removal of aliens described in the priorities."  *Id*.

In 2017, however, a new Memorandum, "Enforcement of the Immigration Laws to Serve the National Interest" was issued.  Fairchild Decl., Ex. D.  This policy expressly rescinded the

2014 Civil Enforcement Priorities and provided that "the Department no longer will exempt classes or categories of removable aliens from potential enforcement."  As a result, some individuals who previously fell outside the 2014 priorities became an enforcement priority in 2017.  While publicly available information indicating someone was in violation of civil immigration law might not have been sufficient for someone to be an enforcement priority in 2014, that changed in 2017.  For the first few years of this litigation, the 2017 Civil Enforcement Memo remained in effect.

In February 2020, Defendants moved to dismiss for lack of jurisdiction arguing, first, that challenges to "selective enforcement" of immigration laws—*i.e.*, removal decisions, proceedings, and related actions—were precluded by the jurisdiction stripping provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§1252(g), (a)(5), and (b)(9); and second, that the organizational Plaintiffs did not have standing to assert claims on behalf of third-parties.  Dkt. 41. Plaintiffs opposed the motion, representing in response to the statutory arguments that they were not asking "the Court to review a decision to 'commence proceedings, adjudicate cases, or execute removal orders' with respect to any individual," but rather their Amended Complaint "identifies individuals ICE targeted only to show the existence of an unconstitutional policy."  Dkt. 56 at 13. Plaintiffs also argued that they had "standing as an organization."  *Id*. at 19.  For its organizational injury, Anti-Racist Whites represented:

> CARW diverted resources to Ms. Mora-Villalpando's removal proceedings, which caused it to miss a planned solidarity day and left it unable to accompany an immigrant to his ICE check-in meeting. *Id*. ¶¶78-82. Further, ICE's targeting of immigration activists—including but not only Ms. Mora-Villalpando—frustrates CARW's mission because CARW's agenda is set by these activist leaders. *Id*. ¶72.

*Id*. at 23.  For its organizational injury, La Resistencia represented:

> ICE's policy has had a resounding chilling effect on La Resistencia. … ICE's conduct has chilled *individual* [members] from [participating], and this effect "has in turn interfered with the [La Resistancia's] ability to carry out [its mission] …

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[3:18-cv-05860-JLR] - 5

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

> [and] La Resistencia sufficiently alleges that ICE's policy—which included its leader, Maru Mora-Villalpando—has caused and continues to cause La Resistencia to divert resources to combat ICE's actions. La Resistencia diverted donations to Ms. Mora-Villalpando's defense team, recruited and worked with lawyers to coordinate political actions, helped Ms. Mora-Villalpando prepare for the immigration process, coordinated a press strategy, and organized rallies on her behalf. FAC ¶ 61. La Resistencia had planned a "Road to Detention" campaign that would have included a march between Tacoma and the northern border, but ICE's sudden pursuit of Ms. Mora-Villalpando forced the organization to drop the plan entirely. *Id.* ¶63.

*Id.* at 21-22 (internal quotation omitted).   Mora-Villalpando also attested that unidentified individuals were chilled in their participation in her organization.  *See* Dkt. 46.  Plaintiffs argued that they did not need to prove their standing allegations in opposition to a pleading motion, but that the allegations were sufficient.  Dkt. 56 at 11, 19, 27.

While the motion was pending, Defendants served discovery requests directed at understanding the basis of Plaintiffs' standing arguments, quoting directly from representations they made in this litigation.  Fairchild Decl., ¶7-8, Exs. F-G.  Even if the motion to dismiss was denied, "Article III requires that a plaintiff have standing throughout litigation," and it is Plaintiffs' burden to demonstrate standing in order for this Court to continue to retain jurisdiction.  *Safley v. Wells Fargo, NA*, 2012 WL 2371401, at *2 (E.D. Cal. June 21, 2012) (dismissal after sua sponte raising standing); *see also Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 945 (9th Cir. 2021) (dismissing at summary judgment after denying 12(b)(1) motion to dismiss because discovery failed to substantiate alleged organizational injury based on diversion of resources).[2]

Ultimately, this Court denied Defendants' Motion to Dismiss.  Dkt. 70. In its standing analysis, this Court credited Anti-Racist White's allegation "that ICE's targeting of activist leaders

---

[2] Should the Court not grant summary judgment for all claims, Plaintiffs will bear the burden at trial to demonstrate that they have organizational standing.

1    frustrates its own mission, which is set by leaders like Mora-Villalpando," and La Resistencia's

2    allegation that unidentified members were chilled.  *Id*. at 15, 20.

3          After the 2020 presidential election, discovery and this litigation paused for many months

4    following the change in administrations and the 2021 issuance of new Guidelines for the

5    Enforcement of Civil Immigration Law. Dkts. 75, 78, 81; Fairchild Decl., Ex. E.  These guidelines

6    provided again for priority categories: "We will prioritize for apprehension and removal

7    noncitizens who are a threat to our national security, public safety, and border security."  *Id.* at  3.

8    They also provided:

9          We must exercise our discretionary authority in a way that protects civil rights and
           civil liberties.  The integrity of our work and our Department depend on it.  A
10         noncitizen's race, religion, gender, sexual orientation or gender identity, national
           origin, or political associations shall never be factors in deciding to take
11         enforcement action.  *A noncitizen's exercise of their First Amendment rights also
           should never be a factor in deciding to take enforcement action*.  We must ensure
12         that enforcement actions are not discriminatory and do not lead to inequitable
           outcomes.
13

14   *Id*. at 5 (emphasis added).  In September 2021, Mora-Villalpando's immigration case resolved,

15   granting her relief. La Resistencia Tr. 36:7-20.  While this case was stayed, the parties attempted

16   to reach a settlement, but were unsuccessful, and the stay was lifted.  *See* Dkt. 85.

17         After litigation resumed, Defendants filed another motion to dismiss, this time arguing that

18   the 2021 Guidelines for Civil Immigration Enforcement rendered Plaintiffs' claims moot. Dkt. 87.

19   In opposition, Plaintiffs argued that they should still be able to pursue their claims "[e]ven if

20   Defendants could prove that no retaliation had occurred since October 2021," and that they were

21   "pursuing discovery to obtain additional evidence of ICE's ongoing retaliatory practices."

22   Dkt. 104 at 21 n.7.  Mora-Villalpando attested to the alleged feelings of unidentified members of

23   her organization and other individuals. Dkt. 105 ¶4.  Plaintiffs also moved for broad nation-wide

24   discovery. Dkt. 95.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[3:18-cv-05860-JLR] - 7

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1    This Court denied Defendants' motion, indicating that even if "Plaintiffs have no evidence

2    that ICE officials have selectively targeted their members based on protected speech since the 2017

3    and 2018 actions described in the amended complaint, much less since the new presidential

4    administration began in January 2021 or since the New Guidelines were issued in September

5    2021," this alone was not dispositive in a mootness motion.  Dkt. 119 at 13.

6    As for Plaintiffs' broad, nation-wide discovery demand, this Court authorized discovery

7    beyond the individuals identified in Plaintiffs' Amended Complaint and initial discovery requests

8    and directed the parties to come up with a discovery plan.  Dkt. 126 ¶¶3-4.  Under that plan, ICE

9    collected over a million documents from dozens of custodians across ICE Field Offices

10   nationwide.  Dkt. 141.

11   Meanwhile, in response to Defendants' discovery requests, Plaintiffs "withdrew" certain

12   allegations and representations previously filed with the Court.  Fairchild Decl., Exs. H-I.

13   Plaintiffs filed a "Notice of Intent to File Second Amended Complaint," indicating that they were

14   withdrawing and would not rely on paragraphs "62, 66, 82, 90, and portions of paragraphs 67

15   (sentences 2 and 4 referring to anonymous detainees) and 89 (reference to decreased group

16   membership)" of the Amended Complaint; paragraphs 4, 5, 6, and 8 from the declaration Mora-

17   Villalpando filed in opposition to Defendants' motion to dismiss for lack of jurisdiction; and

18   paragraph 4 of the declaration that Mora-Villalpando filed in opposition to Defendants' motion to

19   dismiss on mootness grounds.  Dkt. 144.[3]

20   In July 2023, Plaintiffs provided a list of individuals they claimed made up the alleged

21   pattern and practice, adding about a dozen new allegations to the names previously identified in

22

23

24

---

[3] Plaintiffs never filed a Second Amended Complaint.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[3:18-cv-05860-JLR] - 8

1  the Amended Complaint.  Exs. F-G.  The new allegations appear to concern alleged incidents

2  occurring before the 2021 Guidelines for Civil Immigration Enforcement were issued.

3     Defendants then conducted 30(b)(6) depositions of Anti-Racist Whites and La Resistencia.

4  La Resistencia confirmed its withdrawal of allegations related to general membership chill based

5  on unidentified members.  La Resistencia 30(b)(6) Tr. 61:23-62:24; Dkt. 144.  Both organizations

6  testified that their alleged harm due to diversion of resources was based on Mora-Villalpando's

7  immigration proceedings, which had concluded almost two years prior, and neither organization

8  was continuing to divert resources in the same way.  Anti-Racist Whites Tr., 55:15-57:2, 71:25-

9  78:21, 173:23-175:16; Fairchild Decl., Ex. J; La Resistencia Tr., 34:5-36:20.  When asked to

10  explain the basis of their allegations that the individuals who made up their pattern and practice

11  claim were targeted by ICE based on protected speech, Plaintiffs testified that most their

12  allegations come from news articles that they have not independently verified.

13          **III. ARGUMENT**

14    **A. Standard of Review**

15     Summary judgment is appropriate when a "movant shows that there is no genuine dispute

16  as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

17  P. 56(a).  The moving party is entitled to summary judgment when the nonmoving party fails to

18  make a sufficient showing on an essential element of their case for which they bear burden of

19  proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "[T]the burden on the moving party

20  may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence

21  of evidence to support the nonmoving party's case."  *Id*. at 325.

22     Once the moving party has satisfied its burden, it is entitled to summary judgment if the

23  nonmoving party fails to designate, by affidavits, depositions, answers to interrogatories, or

24  admissions on file, "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[3:18-cv-05860-JLR] - 9

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1  U.S. at 324 (internal quotation omitted).  In supporting a factual position, a party must "cit[e] to

2  particular parts of materials in the record … ; or show[ ] that the materials cited do not establish

3  the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

4  evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  But, "the mere existence of *some* alleged

5  factual dispute between the parties will not defeat an otherwise properly supported motion for

6  summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*

7  *v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A fact is material if it affects the outcome of

8  the lawsuit under the governing law.  *Id*. at 248.  An issue of material fact is genuine "if the

9  evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.  A

10  "complete failure of proof concerning an essential element of the nonmoving party's case

11  necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

12      Although inferences from the underlying facts must be viewed in the light most favorable

13  to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

14  (1986), the record must be sufficient to let a rational fact finder find that the inferences nonmovant

15  suggests are more likely than not true.  *See Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1369 (9th

16  Cir. 1992).  The opposing party must present "significant and probative evidence" to support its

17  claim.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "If

18  the evidence is merely colorable, or is not significantly probative," summary judgment is

19  warranted.  *Anderson*, 477 U.S. at 249-250 (internal citation omitted).  "The mere existence of a

20  scintilla of evidence in support of the non-moving party's position is not sufficient[ ]" to defeat

21  summary judgment.  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

22  Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be

23  "presumed."  *Lujan v. Nat'l. Wildlife Fed.*, 497 U.S. 871, 889 (1990).  Nor can the nonmoving

24  party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[3:18-cv-05860-JLR] - 10

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1   or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir.

2   2003).

3   **B.      Section 1252(f)(1) Bars Plaintiffs' Request that this Court Enjoin ICE's Enforcement of Immigration Laws**

4   Plaintiffs ask this Court to "[e]nter a permanent injunction restraining Defendants from

5   selectively enforcing the immigration law against any individual—including, without limitation,

6   through investigation, surveillance, detention, deportation, or any other adverse enforcement

7   action— based on the individual's protected political speech about U.S. immigration law and

8   policy." Dkt. 13 at 20-21. Under 8 U.S.C. §1252(f)(1), their request for injunctive relief is barred.

9   Section 1252(f)(1) states, "[r]egardless of the nature of the action or claim or of the identity of the

10  party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction

11  or authority to enjoin or restrain the operation of [certain provisions of federal immigration law],

12  other than with respect to the application of such provisions to an individual alien against whom

13  proceedings under such part have been initiated." The provisions in question charge the federal

14  government with the implementation and enforcement of the immigration laws governing the

15  inspection, apprehension, examination, and removal of noncitizens. *See Aleman Gonzalez*,

16  142 S. Ct. at 2063.

17  Last year in *Aleman Gonzalez*, the Supreme Court held that Section 1252(f)(1) bars class-

18  action claims seeking to enjoin the government's immigration enforcement operations. 142 S. Ct.

19  at 2065. The Supreme Court similarly held in *Biden v. Texas* that Section 1252(f)(1) also prohibits

20  such an injunction where the claim was brought by States. 142 S. Ct. 2528, 2538 (2022). Like

21  class claims or claims brought by States, claims by organizational plaintiffs similarly fall within

22  Section 1252(f)(1)'s bar because they are not challenging ICE's enforcement actions with respect

23  to an individual person in proceedings.

24

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[3:18-cv-05860-JLR] - 11

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1    Indeed, Plaintiffs here do not purport to bring such individual claims.  They have

2  represented to this Court that they "do not ask the Court to review a decision to commence

3  proceedings, adjudicate cases, or execute removal orders with respect to any individual." Dkt. 45

4  at 7 (quotations omitted).  This Court has previously noted that Plaintiffs do not seek to enjoin or

5  restrain any individual's immigration proceedings. *See* Dkt. 70 at p.2 n.2 ("But [Plaintiffs]

6  emphasize they do not seek to intervene in or enjoin any specific removal proceeding against any

7  individual.").

8    And there is no question that Plaintiffs seek relief that implicates the covered provisions.

9  Specifically, Plaintiffs' requested relief seeks to prohibit the government from detaining

10  noncitizens, action that is governed by sections 1225, 1226, and 1231, covered provisions. *Aleman*

11  *Gonzalez,* 142 S. Ct. at 2064 (characterizing the covered provisions, in part, as those governing

12  apprehension of noncitizens).  Plaintiffs also seek to enjoin "any other adverse enforcement

13  action," Dkt. 13 at 20-21 (Prayer for Relief), which may include "inspection, apprehension,

14  examination, and removal of [noncitizens.]" *Id.*  Plaintiffs even seek relief that would enjoin the

15  initiation of removal proceedings under section 1229, also a covered provision.  *Id.* (seeking

16  permanent injunction to prevent, "without limitation," the "investigation, surveillance, detention,

17  deportation, or any other adverse enforcement action" by ICE).

18    The Supreme Court unequivocally prohibited "lower courts from entering injunctions that

19  order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise

20  carry out the specified statutory provisions." *Aleman Gonzalez*, 142 S. Ct. at 2065.  Thus,

21  Plaintiffs' claims fall squarely under Section 1252(f)(1)'s bar because they are not "with respect

22  to the application of [the law] to an individual alien against whom proceedings … have been

23  initiated." 8 U.S.C. §1252(f)(1).

24

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[3:18-cv-05860-JLR] - 12

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1    The Court in *Aleman Gonzalez* rejected two arguments that Plaintiffs may raise here.  First,

2    the plaintiffs there argued that "the operation" in Section 1252(f)(1) means the operation as

3    properly interpreted, *i.e.*, the Section would bar only injunctions that prohibit the government from

4    acting as the immigration laws allow or command.  *Aleman Gonzalez*, 142 S. Ct. at 2066.  The

5    Ninth Circuit had previously allowed such claims challenging the allegedly improper operation of

6    immigration laws, but the Supreme Court's opinion overruled the earlier cases allowing that

7    practice.  *See Al Otro Lado, Inc. v. Mayorkas*, 2022 WL 3135914, at *9 (S.D. Cal. Aug. 5, 2022),

8    judgment entered, 2022 WL 3970755 (S.D. Cal. Aug. 23, 2022) ("[F]ollowing *Aleman Gonzalez*,

9    this Court no longer can enter injunctive relief under *Ali* and *Rodriguez* that enjoins or restrains

10   Defendants' unauthorized [operation of specific immigration laws] on the ground that the practice

11   … constitutes a violation, as opposed to the 'operation,' of §1225.").  Second, the plaintiffs in

12   *Aleman Gonzalez* argued that Section 1252(f)(1) allows relief for more than one specific individual

13   so long as those other individuals are already facing enforcement actions.  142 S. Ct. at 2067.  The

14   Supreme Court found neither argument availing: on its face, Section 1252(f)(1) bars injunctions

15   restraining the operation of immigration laws, except with respect to an individual against whom

16   proceedings have been initiated.  It thus bars Plaintiffs' claim for injunctive relief here.

17       **C.    Plaintiffs Fail to Demonstrate Competent Evidence of a Pattern and Practice**

18           Plaintiffs fail to provide evidence of an ongoing pattern and practice of selective

19   enforcement based on speech sufficient to support any cause of action.  This Court made clear in

20   authorizing broad discovery that this is a "pattern-and-practice case," and that Plaintiffs bear the

21   burden to "establish a pattern."  Fairchild Decl., Ex. K at 3:3-4, 6:3-5.  Plaintiffs agreed that, to

22   prevail at trial, they must show that the government, "despite its own policies, routinely and

23   repeatedly targets immigrant activists on the basis of their First Amendment advocacy or their

24   free-speech rights."  *Id.* at 3:6-10.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

The Ninth Circuit holds that to prevail on a pattern or practice theory in an analogous constitutional tort context, absent an official government policy, a plaintiff may demonstrate a "longstanding practice or custom which constitutes the standard operating procedure" of the governmental entity. *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (internal quotation omitted). Likewise, the Ninth Circuit holds that when considering whether a policy or practice exists sufficient to confer standing, absent a written policy, a plaintiff may show harm that "is part of a pattern of officially sanctioned … behavior, violative of the plaintiffs' [federal] rights." *Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010) (internal quotation omitted). But, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). And, "[w]hen one must resort to inference, conjecture and speculation to explain events, the challenged practice is not of sufficient duration, frequency and consistency to constitute an actionable policy or custom." *Id*. at 920.

Accordingly, summary judgment is warranted for a pattern and practice claim where a plaintiff presents evidence of a "varied and inconsistent *ad hoc* practice." *Id*.; *see also Jennings v. Seattle Hous. Auth.*, 2010 WL 2426034, at *5 (W.D. Wash. June 11, 2010) (declining to extrapolate a pattern and practice from dissimilar general allegations involving housing authorities). So too, summary judgment is warranted where multiple instances of alleged misconduct fail to demonstrate a widespread practice. *See, e.g.*, *Rainier Beach Dev. Co. v. King Cnty.*, 2018 WL 488946, at *3 (W.D. Wash. Jan. 19, 2018) ("numerous" instances alone do not amount to a government custom if not widespread); *accord Temple of 1001 Buddhas v. City of Fremont*, 2023 WL 4399243, at *2 (9th Cir. July 7, 2023). Additionally, summary judgment is warranted where a plaintiff fails to demonstrate the requisite causal link between the alleged

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[3:18-cv-05860-JLR] - 14

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

practice and the incidents at issue in the case. *See Lawson v. City of Seattle*, 2014 WL 1593350, at *14 (W.D. Wash. Apr. 21, 2014) (summary judgment where plaintiff failed to show link between alleged custom authorizing excessive force and the conduct at issue in the case).

And, perhaps most relevant here, summary judgment is warranted where a plaintiff fails to show that a rational fact finder could conclude that the alleged incidents constituting a pattern and practice of unconstitutional conduct are actual constitutional violations. For example, in the First Amendment context, the court in *Ragasa v. County. of Kaua'i* granted summary judgment on a pattern and practice theory where the plaintiff identified eight alleged instances of First Amendment retaliation, but failed to raise a question of material fact for each incident—including failing to "identify any protected speech sufficient to establish a First Amendment violation" for several. 2016 WL 543118, at *21 (D. Haw. Feb. 8, 2016).

Here, as reflected in the chart below, the record presented by Anti-Racist Whites and La Resistencia suffers from all the defects identified in the above cases. In their Amended Complaint and discovery responses, Plaintiffs identified about two dozen individuals they claim have been targeted based on speech.[4] *See* Dkt. 13 ¶¶16-52 (alleging "known instances of activists targeted by ICE for speaking out"); Ex. F at Interrog. 2; Ex. G at Interrog. 2.

But for the twenty-something alleged instances of targeting, as shown by the below chart, Plaintiffs allegations are largely based on speculation and uncorroborated, unidentified articles and email blasts. La Resistencia testified that some of these emails may even have been deleted and

---

[4] This motion discusses information that Plaintiffs allege in public filings, discovery responses, and/or have testified to and not claimed is protected. Absent permission to publicly disclose a third party's immigration records, through a waiver or otherwise, Defendants do not intend to publicly file third-party protected immigration information or records.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1  thus may not be available for discovery.  La Resistencia Tr. 91:18-92:4.[5]  In any event, they would

2  unlikely be admissible evidence.

3      Both Plaintiffs testified that they lacked knowledge of basic facts central to any First

4  Amendment pattern and practice theory.  For many alleged instances, they failed to sufficiently

5  identify the alleged protected speech or activity or the claimed retaliatory action.  They also lacked

6  a factual basis to claim an enforcement action was due to speech.  They did not rule out, or even

7  consider, lawful explanations for enforcement decisions.  They did not have information about

8  when an enforcement decision may have been made, or whether it was made prior to any alleged

9  protected speech, or if a deciding official had any knowledge of the speech.  Anti-Racist Whites

10  testified that the organization only learned of certain allegations after reading the pleadings in this

11  lawsuit.

12      Some of the alleged instances do not even appear to pertain to ICE, but rather a different

13  government agency who is not a party to this litigation, or to no government agency at all.  Even

14  where Plaintiffs could arguably identify a factual basis to support an allegation, or where they rely

15  on litigation to which they are not parties, it would be at best, evidence of sporadic conduct, not a

16  pattern or practice.  Moreover, the facts and circumstances of the instances purporting to

17  demonstrate a "pattern" are varied and distinct. Indeed, some allegations appear to relate, not to

18  alleged targeting for selective enforcement, but to a distinct issue related to conditions of detention

19  in a facility operated by a private company.

20

21

22

23

24

---

[5] Plaintiffs supplemented their discovery after the depositions.

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

| Allegedly Targeted Individual *Identified in Amended Compl. and/or Plaintiffs' responses to Interrog. No. 2. (Exs. F & G)* | Anti-Racist Whites: Basis of Allegations *Anti-Racist White 30(b)(6) deposition testimony, Ex. A.* | La Resistencia: Basis of Allegations *La Resistencia 30(b)(6) deposition testimony, Ex. B.* |
|---|---|---|
| Jose Montelongo Morales | Discussion at 122:4–122:20.<br><br>**"Q. Okay, so CARW doesn't have any knowledge about his alleged targeting...**<br>A. Yeah, not beyond what's in this, in this paragraph here." 122:14–17. | Discussion at 164:7–168:11.<br><br>**"Q. And you mentioned some news articles, are your allegations based on anything other than the news articles?**<br>A. No." 167:15–18. |
| Delmer Joel Ramirez Palma | Discussion at 122:21–126:25.<br><br>**"Q. Okay so no understanding of his...**<br>A. ... in this, in this package.<br>**Q. ... alleged speech or targeting?**<br>A. No, I can't, I can't personally speak to that." 123:2–6. | Discussion at 159:12–164:6.<br><br>La Resistencia testified that it learned from a 2019 CNN article that Ramirez Palma claimed that Border Patrol (not ICE) agents arrested him because he spoke critically about a private construction company. The CNN article is the only source of their information. 161:3–5; 162:24–163:1. |
| Hilda Veronica Ramirez Mendez | Discussion at 152:9–153:15.<br><br>"Q. What are CARW's sources of information for any allegations about Ms. Ramirez?<br>A. The information provided by La Resistencia as well as the the, lawsuit, which was settled." 152:19–23. | Discussion at 155:17–159:11.<br><br>**"Q. And what is La Resistencia basing its allegations on?**<br>A: Well the, there was a, an, an article in April 2021 it was the Austin Chronicle from April 23rd, 2021. We also receive an email requesting to sign on for support for them for all these sanctuary leaders, including Hilda. And there was also a recent article on the Center for Constitutional Rights from January 22nd, 2023." 157:20–158:4. |
| Francisco Javier Silva | Discussion at 151:17–152:3. | Discussion at 152:19–155:16. |

| | | |
|---|---|---|
| | **"Q. And Francisco Javier Silva, what is CARW's understanding of his alleged speech and alleged targeting based on that speech?**<br>A. My understanding, our understanding as CARW is, just comes from the information that La Resistencia has provided.<br>**Q. Okay. And do you know the source of the information that La Resistencia provided to CARW?**<br>A. No." 151:17–152:1. | **"Q: … And what is the basis of La Resistencia's allegations, what is it basing its information on?**<br>A: We did read these, the Chicago Sun Times in August 3rd of 2019." 154:4–8. |
| Amer Othman Adi | Discussion at 134:2–134:22.<br><br>"This is another one where we, all the information that we have on it is from La Resistencia." 134:6–8. | Discussion at 128:4–130:5.<br><br>"A: We are, we are relying on, on news coverage. There was an article on the Cleveland.com from January 4, 2018. And again there was later news on TV." 129:24–130:2. |
| Kaji Dousa | Discussion at 109:11–111:3.<br><br>**"Q. Okay so, do you know what his alleged speech was or when he was targeted?**<br>A. No, I haven't familiarized with this one." 110:20–23. | Discussion at 148:24–152:1.<br><br>**"Q: And what is the basis of La Resistencia's knowledge?**<br>A: One of the members that were in that database called us and asked us to join a sign-on." 150:19–23. |
| Jean Montreuil | Discussion at 111:6–119:12.<br><br>"Yeah, I have just read the newspaper articles about him." 112:16–17. | Discussion at 120:23–124:21. |
| Emilio Gutierrez-Soto | Discussion at 146:20–148:21; 152:4–8.<br><br>**"Q. And is CARW's basis for knowing this[?] [T]he public reporting?**<br>A. Yeah. I, I became aware of the case when I was reading early pleadings in this lawsuit, and then I looked it up." 148:8–12. | Discussion at 139:14–143:21.<br><br>**"Q. What is the basis of La Resistencia's information or allegation?**<br>A: It was all over the news, and there's an article from the Associated Press from March 7, 2019." 140:16–20. |
| Daniela Vargas | Discussion at 97:3–99:13. | Discussion at 87:19–92:4. |

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[3:18-cv-05860-JLR] - 18

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

| | | |
|---|---|---|
| | **"Q. Has the organization ruled out any other potential motivator for her selection for enforcement?** A. If someone has done that research, I'm not aware of it." 99:1–5. | "A: We learn also through news media, we actually read also the, there's a, an article in CNN, the, the date is March 2nd of 2017 when he goes into details. We also received emails to our list serves, general list serves that talk about the issue." 89:8–13. |
| Jesus Alberto Lopez Gutierrez | Discussion at 148:22–151:16. "I haven't familiarized myself with this case, so my information is the case, that is the information that comes from La Resistencia and is presented here." 149:1–5. | Discussion at 143:22–148:23. "So we talk to one of their family members, [of Beto]. There was an article from the Chicago Sun Times in July 3rd of 2020. And those are the basis of our information." 147:22–25. |
| Sergio Salazar | Discussion at 139:9–148:21. **"Q. And so, the basis of CARW's knowledge is the Intercept news article?** A. Yeah, and also the information that La Resistencia has gathered." 143:4–7. | Discussion at 134:20–138:20. **"Q. And my question is how do you know that happened? So it sounds like calls and newspaper articles. Is there another source of information on which you are relying on?** A. No, that's it." 137:5–9. |
| Eliseo Jurado | Discussion at 128:9–129:25. "That's another one where I remember reading his case in the news and collecting it on my list." 128:21–23. | Discussion at 124:22–128:3. "We have information through the news, it was very well publicized case, I remember seeing it on TV. It was also in, possibly some list serves that I read. It was mentioned in several calls …." 127:9–13. |
| Jose Enrique Balcazar Sanchez | Discussion at 101:11–103:15. **"Q. So, all of this that you recounted, what is the source of your knowledge?** A. I read the pleadings for that case because they sued ICE for a political repression. I read a book chapter about it." 102:8–12. | Discussion at 94:7–99:23. "Like I said before, he is one of the organizers for Migrant Justice, he was coming out of a meeting with his girlfriend when he was detained. So it was precisely it showed to us surveillance because they were being follow." 97:6-10. |

| | | |
|---|---|---|
| Zully Victoria Palacios Rodriguez | Discussion at 102:25–103:15.<br><br>**"Q. And so, is CARW's understanding as to her, this what we just got the Court pleadings, the newspaper articles, and the book chapter?**<br>A. Yes." 103:12–15. | Discussion at 100:5–102:10.<br><br>"[T]he reason why they were targeted is because the entire organization was holding these rallies and speaking against ICE enforcement, so she was targeted along with many others in the organization for the activity of the entire organization." 101:18–23. |
| David Martinez Garcia | Discussion at 158:19–159:21.<br><br>CARW testified that it believes employees of The GEO Group, Inc.[6] told Mr. Martinez Garcia that they would place him in solitary confinement if he did not end his hunger strike. 158:19–159:5; 159:11–16. | Discussion at 176:15–180:3.<br><br>La Resistencia testified that it believes an employee of The GEO Group, Inc., the private company that operates the Northwest ICE Processing Center, placed Mr. Martinez Garcia in solitary confinement because he engaged in a hunger strike. 176:20–177:25. |
| Jose Omar Bello Reyes | Discussion at 153:16–156:7.<br><br>CARW testified that it did not consider whether any factor besides Mr. Bello's speech may have motivated his arrest, though CARW also testified that he had been arrested for driving under the influence in the preceding months. 155:21–156:2. | Discussion at 168:12–172:16<br><br>"[T]he fact that he was given a bond told us that they didn't have to … re-detain him, re-arrest him…." 171:25–172:2. |
| Claudia Rueda | Discussion at 156:8–158:18<br><br>CARW testified that it believes Ms. Rueda was arrested because she protested her mother's detention, though an immigration judge denied her bond, and USCIS denied her DACA application. 156:8–158:18. | Discussion at 172:17–176:14<br><br>La Resistencia testified that it believes Ms. Rueda's arrest was retaliatory because it occurred in 2017 under the Trump administration and because the Border Patrol (not ICE) officer who |

---

[6] *See Nwauzor v. GEO Grp., Inc.*, 62 F.4th 509, 512 (9th Cir. 2023) ("GEO is a private, for-profit corporation that operates detention and correctional centers across the country. GEO acquired the Northwest ICE Processing Center ('NWIPC') located in Tacoma, Washington, in 2005. GEO operates NWIPC pursuant to a contract with Immigration and Customs Enforcement ('ICE') to provide 'detention management services.'").

| | | |
|---|---|---|
| | | arrested her was not in uniform at the time of the arrest. 175:9–176:1. |
| Alejandra Pablos | Discussion at 134:23–139:8.<br><br>"I remember the news, I remember tracking it in the news, and I also remember her having a pretty large public campaign to get her out of detention. And so, when I say that, say that, what I mean is that her case was circulating on list serves that I'm a part of and that other CARW members are a part of, and was publicized on social media accounts that I follow or that other CARW members follow." 137:1–9. | Discussion at 131:1–134:19.<br><br>"And now we know that we have a very clear trend of ICE targeting activists like us, it was, it was easy for us to see that they have been, they, they made the decision to detain her because she's a very outspoken immigrant activist." 134:12–17. |
| Baltazar Rosas Aburto Gutierrez | Discussion at 103:16–109:10.<br><br>**"Q. Okay. And do you know anything about this gentleman's criminal history?**<br>A. Baltazar Rosas Aburto Gutierrez, oh I have deliberately not looked into that.<br>**Q. Okay. And so is the basis...**<br>A. I don't, I don't care what his criminal history is, if it exists." 106:13–19. | Discussion at 102:11–110:15.<br><br>La Resistencia testified that Mr. Gutierrez's arrest "could not be a coincidence" because he spoke to the media and at a later date was detained, though La Resistencia further testified that the organization does not know whether Mr. Gutierrez disclosed his unlawful immigration status when speaking publicly nor whether the decision to arrest Mr. Gutierrez was made before or after he spoke to the media. 106:13–25; 109:5–5. |
| Ravi Ragbir | Discussion at 119:16–122:3.<br><br>"[O]ur approach hasn't been to scientifically try to rule out other explanations for what was happening in this case." 120:14–16. | Discussion at 111:1–120:22.<br><br>"There's no reason to look at any other possibility [to explain why Mr. Ragbir was detained]." 120:16–17. |
| Saja Tunkara | Discussion at 166:2–172:9.<br><br>CARW testified that it believes the timing of Mr. Tunkara's removal was retaliation because CARW believes that someone (the | Discussion at 187:12–193:13.<br><br>La Resistencia testified that it believes that because Mr. Tunkara complained about the medical treatment that ICE arranged for |

| | | |
|---|---|---|
| | immigration judge, an ICE officer, or an ICE attorney perhaps) told Mrs. Tunkara that she would have time to bring Mr. Tunkara items before he was removed, and instead he was removed more quickly than Mrs. Tunkara expected. 171:15–172:6. | him, ICE conducted his removal with less notice to his family than has been provided other detainees, in La Resistencia's experience. La Resistencia acknowledged that Mr. Tunkara was removed to Sierra Leone. 191:19–192:1; 193:2–6.<br><br>Historically, ICE has experienced a lack of cooperation from Sierra Leone in accepting their nationals who are ordered removed from the United States. In fiscal year 2018, ICE removed 256,085 people; only 79 of those removals were to Sierra Leone.[7] |
| Melesio Morales Mata | Discussion at 159:22–162:24.<br><br>**"Q. And did CARW consider any potential reasons besides his, the fact of his speech that may have resulted in his detention?**<br>A. No." 161:25–162:3. | Discussion at 180:7–187:11.<br><br>La Resistencia testified that it believes Mr. Morales Mata was retaliated against for participating in a rally because he was detained an undisclosed amount of time following the rally. The organization further testified that there were no possible alternative reasons to consider for why Mr. Morales Mata was detained because the unspecified timing made it "very clear." 183:21–23; 186:21–187:7. |

In sum, Plaintiffs have not demonstrated that the record is sufficient for a rational fact finder to find an ongoing pattern and practice of selective enforcement based on speech. This is especially true when considering the number of enforcement actions that have taken place since Plaintiffs filed their lawsuit. ICE has conducted hundreds of thousands of administrative arrests and removals in the time since Plaintiffs initiated this lawsuit, and its immigration docket has typically totaled over three million pending cases. Fairchild Decl., Exs. L-P.

---

[7] *See* Fairchild Decl., Ex. N.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[3:18-cv-05860-JLR] - 22

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1    Furthermore, because they depend on speculation, Anti-Racist Whites and La Resistencia

2  cannot meet their burden for every element of their four claims. To defeat Defendants' summary

3  judgment motion, for each cause of action, Plaintiffs must show that the record is sufficient for a

4  rational fact finder to find every element of each claim. *See Anderson*, 477 U.S. at 249-252.

5    For both Plaintiffs' First Amendment and substantive due process causes of action,

6  Plaintiffs' "speculation as to [the government's] improper motive does not rise to the level of

7  evidence sufficient to survive summary judgment," *Karam v. City of Burbank*, 352 F.3d 1188,

8  1194 (9th Cir. 2003) (summary judgment for First Amendment retaliation claim where plaintiff

9  failed to present sufficient evidence to establish "a  nexus between the exercise of her First

10 Amendment rights and her prosecution"); *Losee v. City of Chico*, 738 F. App'x 398, 401 (9th Cir.

11 2018) (summary judgment for substantive due process claim where plaintiff failed to demonstrate

12 that any government official acted without legitimate law enforcement purpose and was only

13 speculating regarding improper purpose).  Simply alleging that something was "retaliatory," or

14 with "no legitimate purpose," or "shocks the conscience," without sufficient factual support

15 amounts to an unsupported legal conclusion warranting dismissal. *See Solares v. Burns*, 2023 WL

16 3582130, at *6 (E.D. Cal. May 22, 2023) (substantive due process claim dismissed because simply

17 "alleg[ing] Defendants took and shared the photographs 'without any legitimate purpose'" is an

18 "unsupported legal conclusion …  insufficient to withstand a motion to dismiss").  Here, Anti-

19 Racist Whites and La Resistencia's 30(b)(6) witnesses testified that they could not determine, or

20 even consider, whether many of the enforcement actions they claim make up a pattern and practice

21 were based on legitimate law enforcement purposes.[8]  But this is their burden to defeat summary

22 judgment.

23

24

---

[8] Setting aside the speculation problem, it is not clear how the record proffered by Plaintiffs supports the claims pled. As pled, these claims concern Anti-Racist Whites and La Resistencia's alleged activities with their members in the Pacific Northwest.  Dkt. 13 ¶¶85-96.  Plaintiffs withdrew any allegations concerning unnamed members, neither

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT          **UNITED STATES ATTORNEY**
[3:18-cv-05860-JLR] - 23                               700 Stewart Street, Suite 5220
                                                      Seattle, Washington 98101-1271
                                                      206-553-7970

1        Additional problems persist Plaintiffs' Administrative Procedure Act and Equal Protection

2    Clause causes of action.  For their APA cause of action, Plaintiffs allege that "ICE's policy of

3    selectively enforcing immigration laws against outspoken immigrant rights activists is arbitrary,

4    capricious and otherwise not according to law, and contrary to the constitutional rights of

5    Plaintiffs…." Dkt. 13 ¶103.  But "[o]nly discrete agency action may be reviewed under the APA,"

6    and a general alleged pattern and practice is not a discrete action.  *Casa Libre/Freedom House v.*

7    *Mayorkas*, 2023 WL 4872892, at *13 (C.D. Cal. July 31, 2023) (Section§706 of the APA did not

8    allow organizational plaintiffs to challenge USCIS's "overall practice" of delay for all petitioners).

9    To survive summary judgment for this cause of action, Plaintiffs must demonstrate that their

10    alleged pattern and practice claim is cognizable under §706 of the APA, and that they raise a

11    question of material fact for all requisite elements.

12        Plaintiffs' Equal Protection claim alleges that "[o]n information and belief, ICE's policy

13    of selectively enforcing immigration laws against outspoken immigrant rights activists

14    disproportionately impacts Latinos," and ICE "is motivated by discriminatory animus against

15    Latinos, as evidenced by the [former] President's many pre-presidential and post-presidential

16    statements." Dkt. 13 ¶¶104-107.  But Plaintiffs have not proffered evidence from which a rational

17    factfinder could determine that there was a disproportionate impact due to the alleged pattern and

18    practice.  Plaintiffs do not appear to claim that every allegedly targeted individual on which they

19    rely is Latino, but even if they did, it would not demonstrate a disproportionate impact on this

20    record.  There is no expert testimony.

21

22

23

24

---

organization claims to be currently diverting resources, and neither organization has explained how they will support the legal theory they pled.  They cannot raise a new legal theory in opposition to summary judgment.  *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[3:18-cv-05860-JLR] - 24

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1    Additionally, Plaintiffs have not proffered evidence from which a rational factfinder could

2    compare "similarly situated persons so that the factor motivating the alleged discrimination can be

3    identified."  *Casa Libre/Freedom House v. Mayorkas*, 637 F.Supp.3d 805, 817 (C.D. Cal. 2022)

4    (internal quotation omitted) (dismissing an Equal Protection claim where plaintiffs failed to show

5    groups were similarly situated).  Without such evidence, Plaintiffs cannot establish a question of

6    material fact for each element of their Equal Protection claim.

7    **D.    Additional Arguments Warranting Summary Judgment**

8    Though this Court need go no further, in the alternative, this Court also should grant

9    summary judgment to Defendants for the following additional or alternative reasons.

10    **i. This Court Should Not Consider Declaratory Relief for Alleged Past Harm**

11    This Court should not entertain a demand for declaratory relief for alleged past harms.  "[A]

12    declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing

13    or future violations of federal law—is not an appropriate exercise of federal jurisdiction."  *Bayer*

14    *v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017).  The "value of the judicial

15    pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than

16    an advisory opinion—is in the settling of some dispute which affects the behavior of the defendant

17    towards the plaintiff."  *Hewitt v. Helms*, 482 U.S. 755, 761 (1987).

18    Here, Anti-Racist Whites and La Resistencia are demanding declaratory relief related to

19    actions that allegedly took place years ago, and without due regard to the current Civil Enforcement

20    Guidelines. Ex. E.  Plaintiffs have not demonstrated a pattern and practice of selective enforcement

21    following the issuance of the 2021 Guidelines for Civil Immigration Enforcement.  Their alleged

22    injuries are in the past.  Anti-Racist Whites and La Resistencia claim that they diverted resources

23    to support Mora-Villalpando, but her immigration proceeding resolved multiple years ago, and

24    neither organization claims to currently be diverting resources.  Anti-Racist Whites Tr., 55:15-

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[3:18-cv-05860-JLR] - 25

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

57:2, 71:25-78:21, 173:23-175:16; Fairchild Decl., Ex. T; La Resistencia Tr., 34:5-36:20.  And neither organization claims membership chill following enaction of the current Civil Immigration Enforcement Guidelines.

### ii. The APA Does Not Authorize the Broad Oversight Plaintiffs Demand

Assuming arguendo that Plaintiffs' APA claim still stands—which it should not—Section 706(2) does not authorize the broad judicial oversight that Anti-Racist Whites and La Resistencia demand.  *See* Dkt. 13 ¶103.  For reasons that equally apply here, the district court in *Casa Libre/Freedom House v. Mayorkas*, rejected an analogous demand in a case where "Organizational Plaintiffs [were] challenging an overall practice of USCIS on behalf of all present and future [Special Immigrant Juvenile] petitioners, and … seek[ing] an injunction ordering USCIS to alter its overall practice to more quickly adjudicate the petitions."  2023 WL 4872892, at *13.  The district court explained that under §706(2) only "discrete agency action" may be reviewed, and while a court "may determine whether particular actions violate broad mandates … the APA does not permit courts to oversee agencies wholesale."  *Id*. (internal quotation omitted).  And where, as here, "the relief requested … is a permanent, forward-looking injunction, … it makes no sense to characterize such an injunction as the 'hold[ing] unlawful and set[ting] aside' of anything."  *Id*.  For these reasons too, summary judgment is warranted for the APA claim.

### iii. Plaintiffs Are Not Entitled to a Permanent Injunction

Finally, if Plaintiffs' causes of actions still stand—which they should not—this Court should still decline to issue the requested permanent nationwide injunction.  "[I]njunctive relief is not automatic, and there is no rule requiring automatic issuance of a blanket injunction when a violation is found."  *N. Cheyenne Tribe v. Norton*, 503 F.3d 836, 843 (9th Cir. 2007).  Instead:

> [A] plaintiff seeking a permanent injunction …  must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[3:18-cv-05860-JLR] - 26

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. … The third and fourth factors merge when the Government is the party opposing the injunction.

*Galvez v. Jaddou*, 52 F.4th 821, 831 (9th Cir. 2022) (internal quotation omitted).  Anti-Racist Whites and La Resistencia cannot make the required showing that their organizations are entitled to a nationwide injunction.   Since they filed their Amended Complaint, ICE issued 2021 Guidelines for Civil Immigration Enforcement providing that "A noncitizen's exercise of their First Amendment rights also should never be a factor in deciding to take enforcement action.  We must ensure that enforcement actions are not discriminatory and do not lead to inequitable outcomes."  Ex. E at 5.  Plaintiffs demonstrate neither an irreparable injury nor a pattern of violations since the new guidelines were issued.  Based on the record they have presented, Anti-Racist Whites and La Resistencia cannot demonstrate that nationwide judicial oversight of agency operations is necessary.

## IV.    CONCLUSION

For the foregoing reasons, this Court should grant summary judgment to Defendants and dismiss all claims alleged by Anti-Racist Whites and La Resistencia.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[3:18-cv-05860-JLR] - 27

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1

DATED this 3rd day of November, 2023.

2

3

TESSA M. GORMAN
Acting United States Attorney

4

*s/ Katie D. Fairchild*
KATIE D. FAIRCHILD, WSBA #47712
ANNALISA L. CRAVENS, TX Bar #24092298
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone: 206-553-7970
Fax: 206-553-4067
Email: katie.fairchild@usdoj.gov
         annalisa.cravens@usdoj.gov

5

6

7

8

9

*Attorneys for Defendants*

10

I certify that this memorandum contains 8,357
words, in compliance with the Local Rules.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[3:18-cv-05860-JLR] - 28

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970