The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NWDC RESISTANCE and COALITION OF ANTI-RACIST WHITES,

    Plaintiffs,

v.

IMMIGRATION & CUSTOMS ENFORCEMENT, et al.,

    Defendants.

No. 3:18-cv-05860-JLR

**DEFENDANTS'
MOTIONS IN LIMINE**

Noted: January 5, 2024

This matter is scheduled for a trial/permanent injunction hearing on January 29, 2024. In advance of the trial, this Court should exclude or limit three categories of proposed evidence, testimony, argument, allegations, and unpled claims that Defendants anticipate Plaintiffs the Coalition of Anti-Racist Whites and La Resistencia will seek to introduce:

(1) Plaintiffs' reliance on unidentified individuals in support of their allegations of chilled membership or targeting, such as the allegations made in Dkt. 164 ¶¶ 5-10, 12, 14, 15.

(2) Unpled claims regarding detention conditions at the Northwest ICE Processing Center, including hunger-strike policies, use of solitary confinement, access to communication devices, and interactions with guards employed by The GEO Group, Inc.

(3) Allegations or claims against non-parties, including The GEO Group, Inc.; the Executive Office of Immigration Review; and U.S. Customs and Border Protection.

DEFENDANTS' MOTIONS IN LIMINE
[3:18-cv-05860-JLR] - 1

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

**1. Plaintiffs should not be allowed to base their claims on unidentified individuals about whom they withdrew allegations and representations made to this Court or otherwise refused discovery.**

Anti-Racist Whites and La Resistencia should be precluded from relying on unidentified individuals for their pattern-and-practice claims.[1] The organizations should be limited to the specific individuals and instances of targeting identified in their discovery responses. In particular, they should not be allowed to rely on unidentified individuals about whom they withdrew allegations and representations to this Court or otherwise refused discovery. Their proposed have-your-cake-and-eat-it-too approach is disallowed by the Federal Rules of Civil Procedure: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Yetti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105-06 (9th Cir. 2001). Here, there can be no claim that Plaintiffs' failure to provide information regarding unidentified individuals was substantially justified or harmless where it was the result of years-long discussions between the parties.

*Unidentified people with allegedly chilled participation.* To understand the basis of the organizations' alleged pattern-and-practice claims and alleged organizational standing that the organizations argued in opposing Defendants' motion to dismiss, *see* Dkts. 56 & 46, Defendants

---

[1] As further explained in the pending summary-judgment briefing, the organizations should be held to their repeated representations that their claims are based on an alleged nationwide policy or pattern and practice. *See* Dkt. 175 at 8-9. Perhaps because the organizations cannot demonstrate an ongoing pattern and practice, they have asked the Court to reimagine their claims, arguing that they can stand based on alleged targeting of non-party Maru Mora-Villalpando alone. *See* Dkt. 174 at 1, 12-13. However, the organizations should be judicially estopped from this eleventh-hour change in position. *See Hartford Fire Ins. Co. v. Leahy*, 774 F. Supp. 2d 1104, 1114-15 (W.D. Wash. 2011). If the organizations are not judicially estopped from asserting claims that stand on alleged selective enforcement concerning Mora-Villalpando, rather than an alleged unconstitutional pattern a practice, then dismissal is warranted for reasons previously raised with the Court. *See* Dkts. 41, 87; *see also* Dkt. 175 at 8-9.

DEFENDANTS' MOTIONS IN LIMINE
[3:18-cv-05860-JLR] - 2

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1  sought discovery on these issues. *See* Dkt. 162 ¶ 7, Exs. F & G. In June 2020, Defendants asked
2  the organizations to identify all the alleged instances of selective enforcement that formed the basis
3  for the operative complaint. *See id*. Defendants asked the organizations to substantiate their
4  claimed organizational injury due to alleged diversion of resources and chilled participation. *See*
5  *id.*

6  For years, after serving discovery requests in 2020, Defendants sought, and Plaintiffs
7  refused to provide, basic information about the individuals whom they alleged ICE targeted—
8  information necessary for ICE to defend itself against these claims. In refusing, the organizations
9  cited a "First Amendment associational privilege," which they contended meant that they did not
10 need to disclose information about allegedly chilled membership that they claimed as an injury, or
11 the alleged instances of selective enforcement that they claimed resulted in the alleged membership
12 chill, even though the organizations initiated this lawsuit. *See id*. Because Defendants were entitled
13 to discover the alleged factual basis for the organizations' injury—i.e., the alleged instances of
14 selective enforcement that allegedly resulted in reduced participation—Defendants told Plaintiffs
15 that they would seek Court resolution if they continued to refuse to respond. *See* Dkt. 162, Exs. I
16 & H.[2]

17 In an attempt to reach a discovery compromise without motions practice, Defendants went
18 to great lengths to try to accommodate Plaintiffs' stated concerns about unidentified individuals.

---

[2] Though not at issue in this motion *in limine*, the discovery Defendants sought is plainly relevant. Discovery has shown that there are any number or reasons why a person may reduce participation, such as childcare challenges, transportation issues, being out of town, focusing on one's family, or the COVID-19 pandemic. *See, e.g.*, Fairchild Decl, Exs. I-K. Moreover, discovery has raised the question whether participation increased in response to the previous administration's immigration policies. Any of this undermines Plaintiffs' claimed injury. Defendants are entitled to ask if participation has in fact reduced because of perceptions of selective enforcement versus any other reason. *Cf. Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 945 (9th Cir. 2021) (organization failed to substantiate standing allegations).

DEFENDANTS' MOTIONS IN LIMINE
[3:18-cv-05860-JLR] - 3

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1  For example, Defendants offered to re-write the protective order to provide additional protections

2  to third parties. Among the provisions Defendants proposed was language providing:

> [A] Receiving Party may use [Attorney's Eyes Only (AEO)] or Confidential Information only in connection with prosecuting, defending, or attempting to settle this Action. The AEO or Confidential Information shall not be used by the Receiving Party for any purpose outside of this Action. No one subject to this Protective Order shall use Confidential Information obtained in this Action to retaliate against, intimidate, discriminate against, or harass any individual in any manner.

7  Fairchild Decl. Exs. A & B. Defendants also offered to use redactions and anonymizers in court

8  filings and to keep the identities of individuals Plaintiffs claimed were allegedly targeted or chilled

9  as Attorney's Eyes Only, meaning they would be shared only with ICE counsel and not with ICE

10 Enforcement and Removal Operations personnel. Fairchild Decl. Exs. A-C.

11  Ultimately, Plaintiffs still refused and instead represented that they would be

12 "withdrawing" certain allegations and representations about unidentified individuals that the

13 organizations previously made to the Court in motions practice. Plaintiffs further told Defendants

14 that they would clarify in their discovery responses that the organizations base their pattern-and-

15 practice claims only on instances of selective enforcement of certain individuals whom Plaintiffs

16 would identify in a supplemental discovery response. Fairchild Decl. Ex. D.

17  In July 2023, after almost five years of litigation, Plaintiffs finally identified all the alleged

18 instances of nationwide targeting on which their claims were based. There were approximately

19 two dozen. *See* Dkt. 162, Ex. F at 6-14, Ex. G at 6-14 (second supplemental responses to

20 interrogatory 2). La Resistencia also affirmed in its verified interrogatory response: "The only

21 members of La Resistencia on which Plaintiffs base their claims are Mora-Villalpando, Martinez

22 Garcia, Tunkara, and Morales Mata. La Resistencia does not base its claim on any undisclosed

23 individuals affiliated with La Resistencia, and it has not limited its answers to this interrogatory

24

DEFENDANTS' MOTIONS IN LIMINE
[3:18-cv-05860-JLR] - 4

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

based on the First Amendment privilege." Dkt. 162, Ex. G at 4 (second supplemental response to interrogatory 1).

Weeks later, the organizations sought assurances that, in the organizations' Rule 30(b)(6) depositions, Defendants would not ask about unidentified individuals that Plaintiffs referenced in their operative complaint and in declarations filed with the Court. Defendants agreed that, if Plaintiffs filed a notice with the Court indicating that they were withdrawing allegations and previous representations from the case, then Defendants would not ask about these issues. Fairchild Decl. Ex. E.[3] Having secured that agreement, the organizations filed a notice with the Court indicating that they were withdrawing their allegations and parts of declarations concerning unidentified individuals. *See* Dkt. 144. During the depositions and in the months that followed, Plaintiffs represented to Defendants that they were not claiming a general reduction in membership participation. Accordingly, Defendants did not ask the 30(b)(6) deponents about unidentified individuals or a general reduction in membership participation. *See* Fairchild Decl. ¶ 6.

Despite these representations to the Court and Defendants, Defendants anticipate that Plaintiffs will continue to rely on unidentified individuals at trial because Mora-Villalpando's November 2023 declaration does just that. Dkt. 164. She states, for example, "Undocumented people and other individuals who share La Resistencia's views have been and remain afraid of being associated with La Resistencia because of ICE's practice of targeting activists." Dkt. 164 ¶ 5. Despite the reference to plural "people" and "individuals," Mora-Villalpando names only one person, Mr. Mata. *Id.* She adds that she has "heard of other instances of retaliation that chilled participation in our organizations," but she names none. *Id.* ¶ 8. And she states that unidentified

---

[3] Defendants also agreed that they would not video record depositions so that non-parties would not feel intimidated. *Id.*

DEFENDANTS' MOTIONS IN LIMINE
[3:18-cv-05860-JLR] - 5

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

"people" are "chill[ed] … from coming forward." *Id.* ¶ 10. These are exactly the sort of allegations Plaintiffs represented they would not put at issue and refused to allow discovery. But during the parties' meet and confer, counsel for Plaintiffs confirmed that Mora-Villalpando intends not to limit her testimony and intends to testify consistent with her November 2023 declaration.

Here, if Plaintiffs wanted to argue at trial that "people" and "individuals" are chilled from participating in the organizations' activities because of alleged targeting, Defendants had a right to explore those allegations before trial. For example, Mr. Mata—the only person Plaintiffs claim was a member who left La Resistencia due to alleged targeting—testified that he was not participating in La Resistencia activities both because of fear and because he wanted to spend more time with his family. Fairchild Decl. Ex. F at 52:13-53:18. Likewise, a member of Anti-Racist Whites noted that she chose not to participate in the organizations' protests for personal reasons. *See* Fairchild Decl. Ex. I. These examples demonstrate that there may be myriad reasons why a person chooses not to participate in the organizations' work—and Plaintiffs blocked Defendants from exploring those reasons before trial. Because Plaintiffs limited Defendants' discovery into any allegedly chilled individual beyond Mr. Mata, Plaintiffs should be similarly limited at trial. Even if Plaintiffs propose disclosing these names at the last minute after previously blocking discovery into them, under Rule 37 any evidence and argument related to chilled participation should be limited to what Plaintiffs allowed Defendants to explore in discovery.

***Undisclosed instances of alleged targeting.*** Evidence and argument regarding alleged targeting should similarly be limited to the individuals Plaintiffs disclosed in discovery. In discovery, Plaintiffs represented in a verified interrogatory response that, in their view, "Defendants have targeted … for retaliatory, selective enforcement of immigration laws" approximately two dozen people:

DEFENDANTS' MOTIONS IN LIMINE
[3:18-cv-05860-JLR] - 6

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

> Maru Mora-Villalpando; Daniela Vargas; multiple members of Migrant Justice (including, but not limited to Jose Enrique Balcazar Sanchez and Zully Victoria Palacios Rodriguez); multiple members of New Sanctuary Coalition (including, but not limited to, Ravi Ragbir, Jean Montrevil, and Kaji Dousa); Baltazar "Rosas" Aburto Guiterrez; Eliseo Jurado; Amer Othman Adi; Alejandra Pablos; Sergio Salazar; Emilio Gutierrez-Soto; Jesus Alberto Lopez Gutierrez; Francisco Javier Silva; Hilda Veronica Ramirez Mendez; Jose Montelongo Morales; Delmer Joel Ramirez Palma; David Martinez Garcia; Claudia Rueda; Jose Omar Bello Reyes; Saja Tunkara, Melesio Morales Mata, and the individuals listed in the publicly available Immigrant Rights Voices database jointly maintained by the NYU Immigrant Rights Clinic and the New Sanctuary Coalition (available at https://www.immigrantrightsvoices.org/#/)

Dkt. 162, Ex. G at 4 (second supplemental response to interrogatory 1). In Mora-Villalpando's recently filed declaration, however, she purports to add additional allegations of targeting by staff employed by The GEO Group, Inc., at the Northwest ICE Processing Center (NWIPC) against people engaging in hunger strikes and a person who filed a complaint. *See* Dkt. 164 ¶¶ 14-15. These allegations should be excluded both because they were not disclosed in discovery and because, as further set forth below, they present a new type of claim against an entity not party to this case.

2. **The trial should exclude an unpled claim arising from detention conditions at the NWIPC.**

Trial should be limited to the case before the Court. *See Hicks v. Ass'n of Apartment Owners of Makaha Valley Plantation*, 2016 WL 3856134, at *1 (D. Haw. 2016) (excluding from trial "any testimony, evidence, or argument, as to unpled claims"). Plaintiffs brought this case to challenge ICE's alleged "practice … to systematically surveil, detain, and deport immigrant activists who speak out about immigration policies and practices." Dkt. 13 at 1. To end this alleged practice, Plaintiffs ask the Court to "[e]nter a permanent injunction restraining Defendants from selectively enforcing the immigrant law against any individual—including, without limitation, through investigation, surveillance, detention, deportation, or any other adverse employment action." *Id.* at 20-21. Perhaps because Plaintiffs cannot show an ongoing nationwide pattern and

DEFENDANTS' MOTIONS IN LIMINE
[3:18-cv-05860-JLR] - 7

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

practice of selective enforcement of civil immigration law based on speech, especially following the 2021 *Guidelines for the Enforcement of Civil Immigration Law*, or perhaps because the Supreme Court foreclosed their claims in *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022),[4] Plaintiffs try to recast their claims for trial. Now, their allegations center on conditions of detention at the NWIPC in Tacoma. A case challenging detention conditions at the NWIPC is a fundamentally different case from the one Plaintiffs brought.

This Court should not allow this shift to a different case for two reasons. *First*, the NWIPC is a private detention center owned and operated by a private company, The GEO Group, Inc. (GEO), not by ICE. Declaration of Geoffrey White ¶ 3. GEO is an independent contractor that provides the facility, management, personnel, and services for 24-hour supervision of immigrant detainees in ICE custody at the NWIPC. *Id.* GEO personnel are not employed by ICE, and all guards at the NWIPC are GEO personnel. *Id.*

Although GEO is not a party to this case, Plaintiffs' unpled, newly raised allegations are against GEO, not ICE. For example, Mora-Villalpando claims that an NWIPC guard "taunted" an unidentified detainee as a form of retaliation.[5] Dkt. 164 ¶ 15. She also believes that detainees' calls are blocked to interfere with La Resistencia's efforts to organize hunger strikes. *Id.* ¶ 14. GEO manages detainee access to emails, phone calls, and video calls. White Decl. ¶ 12. David Martinez Garcia also complains about conduct by guards at the NWIPC. *See* Dkt. 106 ¶¶ 5-6. If Plaintiffs want to claim that GEO staff are acting illegally, then GEO has a right to defend the accusations in a properly pled case against GEO. As a private company, GEO also has its own private counsel who should be allowed to represent the company's interests in claims that its employees are

---

[4] This argument is addressed in Defendants' summary-judgment briefing. *See* Dkts. 161 at 11-13 (motion); 175 at 3-7 (reply).

[5] Detainees are free to submit grievances regarding GEO employee conduct. White Decl. ¶¶ 7, 9.

DEFENDANTS' MOTIONS IN LIMINE
[3:18-cv-05860-JLR] - 8

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

breaking the law. GEO is regularly named as a party in detention-conditions cases and appears with its own counsel. *See, e.g.*, *Avendano v. Bostock*, No. 2:20-cv-700 (W.D. Wash.) (naming the GEO Warden, who appeared with private counsel).

Indeed, it would offend basic concepts of due process if the Court were to enter an injunction mandating that GEO take or not take certain actions, or issue a declaration that GEO is acting unlawfully, without GEO's participation in the proceeding. The Federal Rules of Civil Procedure do not allow courts to enjoin non-parties. *Swanberg v. Tro*, 2016 WL 406342, at *3 (D. Or. 2016) (explaining the limitations of Rule 65(d) and noting that the Rule "does not empower the Court to enjoin a nonparty"). GEO should be allowed to respond to the allegations of misconduct by GEO employees.

*Second*, the newly raised allegations present an entirely different claim than those pled in the operative complaint, and their inclusion at trial would prejudice Defendants. *AK Futures, LLC v. LCF Labs, Inc.*, 2023 WL 4155388, at *1 (C.D. Cal. 2023) (holding that it would be prejudicial to allow evidence of unpled claims). The November 2023 declaration by Mora-Villalpando focuses on: (1) people engaging in hunger strikes at the NWIPC, (2) actions allegedly taken by NWIPC guards employed by GEO, and (3) GEO's management of detainee access to telephones at the NWIPC. Dkt. 164 ¶¶ 6, 7, 9, 14, 15. All of these allegations should be excluded. None is a selective enforcement action taken by ICE, which is all the operative complaints challenges. *See* Dkt. 13. GEO personnel, who manage and own the NWIPC, cannot even take enforcement actions—they cannot make decisions to detain or deport activists who speak out about immigration policies and practices, the allegedly illegal conduct Plaintiffs challenge in this lawsuit. *See id.* at 1.

Allowing these allegations about the NWIPC would also prejudice Defendants because the unpled claims were never explored in discovery. There was no discovery specific to the NWIPC: no discovery into the practices and procedures for hunger strikes, no discovery into complaints

DEFENDANTS' MOTIONS IN LIMINE
[3:18-cv-05860-JLR] - 9

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

against GEO guards, and no discovery into GEO's management of detainee access to telephones. Because there was no discovery into these unpled allegations, it is unclear whether Plaintiffs believe that the formalized standards that ICE and GEO follow for people engaging in hunger strikes are unconstitutional, or that they are applied unconstitutionally to certain detainees.[6] If forced to litigate hunger-strike policies at trial, the parties would be exploring the issues for the first time then.

It is not even clear what cause of action Plaintiffs purport to bring to challenge ICE's hunger-strike policies or GEO's treatment of detainees at the NWIPC. Whatever it is, it is not raised in the operative complaint, so Defendants never had the opportunity to move to dismiss it based on sovereign immunity, the discretionary function exemption, failure to state a claim, or any other potentially applicable defense or privilege. Allowing the unpled—and therefore undeveloped and unchallenged—claim(s) at trial would severely prejudice Defendants.

### 3.     The trial should be limited to claims against and allegations about ICE.

In the operative complaint, Plaintiffs bring claims ICE, its Director, and the Secretary of Homeland Security. Dkt. 13 ¶¶ 6-8. The complaint is clear that "[t]his lawsuit challenges the practice of Defendant Immigrations and Customs Enforcement ('ICE') to systematically surveil, detain, and deport immigrant activists who speak out about immigration policies and practices." *Id.* at 1. The complaint does not allege any specific instances of misconduct by the Department of Homeland Security (DHS); Defendants presume the Secretary was named because of DHS's role

---

[6] ICE's national standards, the Performance-Based National Detention Standards 2011 (PBNDS), which govern the operation of the NWIPC and other detention facilities, prescribe the steps that ICE and GEO must follow in response to a hunger strike. White Decl. ¶ 13. Those standards state that, "when medically advisable and taking into consideration the detainee's mental health needs," "[m]edical personnel shall monitor the detainee in a single-occupancy observation room." PBNDS 4.2, *available at* https://www.ice.gov/doclib/detention-standards/2011/4-2.pdf. Once a detainee meets the definition for being on a hunger strike, they are admitted to the medical housing unit for monitoring. White Decl. ¶ 16.

DEFENDANTS' MOTIONS IN LIMINE  
[3:18-cv-05860-JLR] - 10

UNITED STATES ATTORNEY  
700 Stewart Street, Suite 5220  
Seattle, Washington 98101-1271  
206-553-7970

in implementing guidance for ICE. *See, e.g.*, Dkt. 13 ¶ 101 (describing the Secretary of Homeland Security's 2017 memorandum *Enforcement of the Immigration Laws to Serve the National Interest*).

The complaint alleges no claims against GEO, the Executive Office of Immigration Review (EOIR), or U.S. Customs and Border Protection (CBP). However, it appears that in some instances, the alleged targeting that Plaintiffs challenge was done not by ICE but rather by GEO, EOIR, or CBP. Because these entities are not parties, any allegations or claims against them should be excluded from trial, and the evidence should be limited to conduct by ICE (or, to the extent Plaintiffs allege any, the Department of Homeland Security).

*GEO.* As described above, Defendants anticipate that Plaintiffs will seek to introduce testimony and other evidence regarding what they view as unlawful conduct by GEO guards at the NWIPC. For example, Anti-Racist Whites testified that corrections officers at the NWIPC allegedly "threatened" a detainee with solitary confinement because he was engaging in a hunger strike. Fairchild Decl. Ex. G at 158:19-159:10. The organization further testified that, as far as it knew, the offending corrections officers were GEO employees. *Id.* at 159:11-16. La Resistencia similarly testified that a GEO guard, not any ICE employee, retaliated against the same detainee. Fairchild Decl. Ex. H at 176:15-177:25. As described above, Mora-Villalpando's recently filed declaration also contains additional allegations against GEO, all of which should be excluded from trial. *See* Dkt. 164 ¶¶ 6, 7, 9, 14, 15.

*EOIR.* Defendants also anticipate that Plaintiffs will testify that some individuals' bond determinations were retaliation. Bond decisions are often made by immigration judges employed by EOIR, an agency within the U.S. Department of Justice. To the extent Plaintiffs cannot show the bond decisions they challenge were made by ICE, they should be excluded. For example, in discussing the alleged targeting of Claudia Rueda, the Coalition of Anti-Racist Whites testified

DEFENDANTS' MOTIONS IN LIMINE
[3:18-cv-05860-JLR] - 11

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

that an immigration judge failed to grant her release on bond. Fairchild Decl. Ex. G at 156:8-157:2. Regarding Jose Guadalupe Montelongo Morales, La Resistencia testified that his bond was set high in retaliation for a lawsuit he filed against an unknown entity. *See* Fairchild Decl. Ex. H at 164:7-166:19. The organization did not know whether ICE or an immigration judge set the bond. *Id.* at 166:20-167:8. If it was an immigration judge, it should be excluded.

***CBP.*** Finally, Defendants anticipate that Plaintiffs will try to introduce alleged conduct by CBP officials, though CBP is not a party. Although Plaintiffs named the Secretary of Homeland Security, CBP is not mentioned in the operative complaint. *See* Dkt. 13.

Defendants anticipate that Plaintiffs will provide testimony and evidence regarding alleged retaliation against Delmer Joel Ramirez Palma, Kaji Dousa, and Claudia Rueda. However, La Resistencia testified that CBP, not ICE, retaliated against Ramirez Palma for filing a lawsuit against a private construction company and private developers. Fairchild Decl. Ex. H at 159:12-161:12. The organization affirmed that the specific retaliatory action they allege is his arrest by CBP. *Id.* at 162:6-10. And Plaintiffs' summary-judgment briefing relied on Dousa's case regarding alleged retaliation by CBP officials, not ICE officials. Dkt. 174 at 17 (citing *Dousa v. U.S. Dep't of Homeland Sec.*, No. 19-CV-1255, 2023 WL 2586301 (S.D. Cal. Mar. 21, 2023) (addressing alleged retaliation by CBP only)). As to Rueda, although Anti-Racist Whites testified that her arrest was the retaliation she suffered, La Resistencia testified that it was CBP, not ICE, who arrested her. Fairchild Decl. Ex. I at 156:8-9, 157:15-18; Fairchild Decl. Ex. H at 172:17-173:12. She was then denied bond, though there is confusion between the organizations as to whether ICE or an immigration judge issued that denial. If it was an immigration judge, the matter should be excluded from trial.

If Plaintiffs wanted to bring claims against GEO, EOIR, or CBP, they needed to seek leave to amend their complaint and add them as parties to the litigation. These entities would each have

DEFENDANTS' MOTIONS IN LIMINE
[3:18-cv-05860-JLR] - 12

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

a right to present their own witnesses and evidence and, in the case of GEO, be represented by their own private counsel. Plaintiffs should not be allowed to backdoor their grievances with GEO, EOIR, or CBP in this lawsuit against ICE.

**Certificate of Conference**

Defense counsel certifies that they met and conferred with Plaintiffs' counsel before filing these motions *in limine*. LCR 7(d)(4). The parties were unable to agree as to the motions *in limine* raised above.

Dated December 18, 2023.

Respectfully submitted,

TESSA M. GORMAN
Acting United States Attorney

*s/Katie D Fairchild*
KATIE D. FAIRCHILD, WSBA #47712

*s/Annalisa L. Cravens*
ANNALISA L. CRAVENS, TX Bar #24092298
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone: 206-553-7970
Fax: 206-553-4067
Email: katie.fairchild@usdoj.gov
   annalisa.cravens@usdoj.gov

*Attorneys for Defendants*

I certify that this memorandum contains 3,931 words, in compliance with the Local Rules.

DEFENDANTS' MOTIONS IN LIMINE
[3:18-cv-05860-JLR] - 13

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970